IN THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

20

H.L. WATKINS, JR.

v.

STATE DISTRICT JUDGE
MIGDALIA LOPEZ,
197TH JUDICIAL DISTRICT

CASE NO: 90-CR-814-C
CA B-00-112

United States District Court
Southern District of Texas
FILED

AUG 25 2000

Michael N. Milby, Clerk of Court

MOTION FOR WRIT OF HABEAS CORPUS:

To the Honorable Judge of this Court:

Comes H.L. Watkins, Jr., a 75 year old Veteran of World War II, Korea and Vietnam, disabled due to service connected wounds in aerial combat during six (6) tours of aerial combat duty and 15 wounds which earned eight (8) Purple Hearts, seeking justice from an honest Judge in an honest Court, thus far unavailable in Brownsville State and U.S. Courts.

Petitioner was arrested at 10:30 hours on 27 July, 2000, by three Cameron County Constables who entered his home without ringing the door bell nor an invitation, and minus search & seizure warrants. The armed men stated they had warrant(s) for the arrest of Horace Lamar Watkins, a Methodist Minister in the state of Texas some thirty seven years, deceased since 1964. They were shown three forms of I.D.; a valid Texas drivers license, Social Security card and birth certificate that states the owner of the privately owned home they'd entered without invitation

Petitioner was charged with aggravated possession of a controlled substance, albeit that an under cover agent stated in his report that he'd placed illegal contraband into the cargo compartment of the truck, then five sentences later states that the owner of the truck paid him for the marijuana with the drug dealer's money. This report is a six page document that is signed at the bottom of page 1; was not sworn to nor ever filed with the Clerk of the Court.

A second such document, one page, states: "The money was found in their vehicle". It was produced by the Task Force Commander, notarized and filed on the same day as authored, but withheld from a demand for all exculpatory documents from Cameron County District Attorney, Luis V. Saenz, then was removed from the Clerk's files until a U.S. Attorney investigation in late August and September of 1995 was underway, looking into tampering, withholding and altering court documents in the D.A.'s office. Nonetheless, Horace Lamar Watkins was indicted on one count of making an illegal investment on 25 July, 1990, then was arraigned on two counts; illegal investment and aggravated possession on 16 August, 1990, while the judge held the two police reports above, plus a third document by the Cameron County Special Investigator, James Parker, whose statement also swears the (confiscated) money was found in their vehicle, in his hands, in the Clerk's files.

District Court Judge Fernando Mancias of Edinburg replaced the presiding judge during the trial, and again there were three exculpatory documents in the case files on 3 December, 1990, when Mancias sentenced the deceased Reverend Doctor Horace Lamar Watkins to

that he had read the Presentencing Investigation, then proceeded into the punishment phase of the trial. Nonetheless he had stated in court that he'd not had time to read it, and sent the Petitioner and his lawyer into the hall to do so, while he sentenced the Florida man, whose PSI he'd stated was also not read. Had he read the PSI for the Petitioner, he would have noted that President Harry Truman had decorated him in the Rose Garden of the White House on 6 September, 1949, for service performed in 1945 while serving as a pilot in the 8th Air Force, Europe. He would also have noted that, at that time, the man standing before him was the most decorated combat veteran residing in the entire Rio Grande Valley, and not only had an exemplary war record in 6 tours of aerial combat in three wars, the report showed a (1) traffic ticket in his entire life, issued in Rio Hondo two weeks prior to the report's existence.

    Petitioner reported to ~~a number of~~ probation officers and paid a monthly fine until a series of three heart attacks occurred in November, December, 1996, and January, 1997. With an MA degree from Stanford in constitutional law, Judge Darrell B. Hester was asked to set aside the illegally imposed sentence of Reverend Watkins, and three documents were enclosed as appendix: a death certificate, the Task Force commander's Report and Supreme court Ruling that states

The Case was assigned into the jurisdiction of Magistrate Judge Fidencio G. Garza, Jr., who also ignored the Civil Action or orders from his boss, Judge Vela. Thus, a suit was filed against them, et al, in Victoria, where the U.S. Attorney's staff in Houston placed their federal clients into default for failure to respond and defend pursuant to Rule 4 of the F.R.A.P., and the Summons itself. Rather, they filed for an extension of time after diddling off their sixty day response period, and filed their original response six months late. Nonetheless, Presiding Judge John D. Rainey granted their motion for extension of time, nearly a month into their default period.

When Judge Tagle arrived in Brownsville, B-95-183 and V-98-0024 had laid dormant for some time, and she was ordered to consolidate the two cases, bring them together in Brownsville, then ~~dismiss~~ both with a single stroke of her pen. In her consolidation order, she stated: "The Court, after reviewing the contentions of ~~Plaintiff's~~ BOTH parties, finds that these cases involves the same question of law and facts"; which constitutes two perjured statements in one sentence. First, her document is dated 10 July, 1998, and no responses were made and no contentions presented by the Houston lawyers until five days later, on 15 July, 1998. Further, B-95-183 was a Title 42, USC, Section 1983, Civil Rights case, and V-98-0024 charges perjury and obstruction of justice — the only common denominator being the same Plaintiff, Pro Se.

When this serious infraction was brought to the attention of the Court, Her Honor ordered a Magistrate Judge's report & recommendation from John Black,

Plaintiff, Pro Se then filed L-99-99 in Laredo, including Judges Fagle and Black, plus the defendants in Both B-95-183 and V-98-0024, charging perjured Court documents and obstruction of justice, etc. When Magistrate Judge Marcel C. Notzon was given jurisdiction of the case, she allowed the US Attorney in Houston, two days prior to every single defendant's default for failure to respond, an indefinitive period in which to respond, by stating: "The Court is of the opinion that Rule 26f, if applied to this civil action, would not serve the best interests of the parties, more than half of whom have until 20 January, 2000 in which to respond"; or facsimile. Her document is dated 13 January, yet the envelope is Post dated on 19 January, 2000, and a motion for an extension of time from ~~Houston~~ LAREDO is dated 18 Jan-2000 Post marked 19 January, 2000, received in San Benito on 21 January, 2000 with Notzon's order, which concludes: "Therefore, this civil action is postponed until such time as the Court, of its own accord, orders otherwise", or facsimile.

Another suit was then filed in Houston, but was acted upon immediately and dismissed by the senior District Judge on an unknown date that is on file in San Benito, but unavailable in the Cameron County file.

Thus, invoking a 5th Circuit Court ruling in which the three judge panel stated: "A judicial officer cannot be held liable for his/her action on the bench, regardless if the judge used bad judgement, applied th

Section 1983 Constitutional violations and obstruction of justice. Judge Lopez, as the Court must be aware, took Judge Hester's seat in the 197th when he retired, and therein lies the basis for this Motion for a Writ of Habeas Corpus, to win freedom from jail.

Shortly after Judge Lopez took office, a motion to set aside was filed to her attention, which she ignored. She then became a defendant in L-99-99, and is now a defendant in Watkins v Sitgreaves. Your Honor, each of the twenty plus defendants are aware of their own Court documents that they must face and answer for, if the case goes to court in Judge Rey Valdez or Judge Menton Murray's Court, and my presence in jail since 29 July is due to the fear of losing to a non-lawyer Plaintiff, Pro Se. Therefore, as desperate people are predisposed to do in desperate situations such as theirs, Her Honor lost with the short straw draw, and joined together her team to get their adversary off the street and unable to prosecute his case, in which 11 of the defendants were in default as of 26 July, 2000, the last date of mail before the arrest. Here's how it was done.

With a capias dated 27 July, 1998, a motion to terminate Horace Watkins' probation was filed with the clerk by the D.A., along with an arrest warrant to the 197TH with Judge Hester's name on the signature line, but no signature, naturally, the document commands any law-enforcement agent in Cameron County to arrest Reverend Horace Watkins. Now, Sir, keep in mind that Judge Lopez has been supplied with a birth and death certificate of father & son, and is a defendant in W.S.

Jaquiline Church, who was told her sole duty was to employ the invalid and illegal arrest warrant to obtain my release, immediately. She did not do as she was told — rather, she set an arraignment hearing with Judge Lopez, the prosecutor, Geoff Henman and Horace Lamar Watkins, although Church was also shown a birth certificate, driver's license & social security card as I.D. for her client. She then demanded that I sign an employment contract, which called for payment for services rendered, upfront. When I asked what she'd done to warrant any trust in her ability to obey her reason for retention, she went to Judge Lopez and I was sent back to my cell.

That evening, a Philip Cowen, lawyer in Brownsville, was dispatched by Judge Lopez, and he asked point blank: "Do you know why you are here?" to which he was asked why he was here, also. He said: "Look, Colonel Watkins, you were arrested with a two year old, unsigned warrant; your name is not on the document and it appears to me that Judge Lopez' name was removed with white-out, then Judge Hester's name was super-imposed in its place. Let me ask you something, have you stepped on anyone's toes, lately?", or facsimile.

He then asked if he could get copies of citations to certain of my medals, and I naturally inquired why he would ask such a question. He stated he could th-

bringing the conspirators into full view with Judge Lopez and her "advisors". The man pushed hard for any information about my little Mexican wife who is from San Luis Potosi, Mexico. Our daughter and we concluded that if it was important enough to take me into custody as they did, it is equally as vital that if their efforts failed to have the lawsuit dismissed, it would also be beneficial if she could also be arrested on whatever pretext until I filed for dismissal in exchange for both of our release. And, my thoughts of deviousness were verified when Cowen took me before Judge Lopez on 11 August, 2000. When she asked if Horace Watkins was present, Cowen said: "Yes, Your Honor". I denied his words: "No, Your Honor, he was unable to make it, but I'm Colonel H.L. Watkins, Jr., his son, and I'd like —" She cut me off from saying: "to see the arrest warrant that brought me to jail and into your court." "Sit down, Mister Watkins", she demanded of me: "I'll recall you later". She did not do that. Rather, she arraigned a dozen or so illegal aliens, then called Cowen and Henman to the bench and whispered into their ears, then recused herself from the case against me, aware that I'd be in jail and out of the defendants' hair for at least two or three weeks while the case was slowly being reassigned to another judge of the defendants' choosing.

    Notwithstanding my concern for my files that are the backbone of my case, Your Honor, I have a heart disease known as Angina. The prime activator of Angina is fear and apprehension, excessive stress and hypertension, and cold. This Cell is extremely cold — in the low 70's 24 hours a day.

of July. However, my nitro had been stolen from the nurse's station in the County Bldg where I was kept my first night here. Without another bottle of nitro on hand, approximately thirty minutes allowed Angina to progress into a full blown heart attack that put me into a Coma. The next thing I remember was a nurse's fingers forcing a nitro tablet beneath my tongue. I begged to be taken to a hospital, and was told: "We can't do that without Sheriff Lucio's approval". I demanded that I be treated as a dog would be outside these walls, and while the nurse agreed that my condition was severe she said her hands were tied. I then asked her to call my cardiologist, Dr. Charles Mild, in Harlingen, which request drove her to leave me alone in the cell with an outdated bottle of nitro, which nonetheless kept me alive through that night.

The following day, I was transferred to this unit, and was ordered the following morning to sweep and mop the 24-man cell by a 19 year old Mexican boy. Most of the inmates were in bed, following breakfast, as I did as I was ordered, and was half finished with the mop when Angina kicked in and dropped me to the floor. A male nurse/inmate came to my aid by retrieving the bottle of nitro, while three guards stood outside the bars doing nothing. The nurse urged them to get the Sheriff's Ambulance and send me to my own doctor at Valley Baptist in Harlingen, only to be told they could not do that.

night without medications went by slowly, and the following morning at or about 4 A.M., I inhaled a huge amount of flim during a sneeze, which in turn brought on fear of death and Angina.

The nurse, an ex-navy medic, attempted to get medical attention for me, and was told the nurse would be here at 0800 hours. With a lung already damaged in Korea during the winter of '50-'51, then added to by hepatitis & yellow jaundice in the liver, I was certain my time on earth was nearing an end. My nurse/friend by that time, stayed at my side though the entire ordeal, during which time I was given two immitation tylenol - period. During the day of 17 August, my sinus became blocked and I lost equilibrium shortly thereafter. A radiologist was sent here about noon for a chest X-Ray - some thirty hours after inhaling the flim, and only the previous damage was visable. "You have no fluids in your lungs, Colonel Withers," I was told in a sarcastic and facetious tone of voice.

During the day yesterday, I was taken to the Unit infirmary to see a "nurse practitioner" who promised faithfully she'd get Antibiotics to me no later than 9 P.M. last night. I've not seen them as I write to you, and the majority of inmates in this cell are now coughing & sneezing as I've been doing for three days and nights. The practitioner also stated she'd call Doctor Mild to keep him informed of my health, which has also not been done. If she had, he'd either be here or would have called and

Clinic, where the phones are blocked to Collect Calls. He is not listed at home. Therein lies a huge dilemma for me as long as I'm inside looking out.

Now, Your Honor, I am neither naive nor disrespectful of the American Judicial System and the Federal Rules of Civil Procedure, although in my present circumstantial atmosphere where copy machines are unavailable to me, I'm going to ask that you have one of your staff file this with the Clerk, and forgive the fact I am short on tablet paper, plus my poor penmanship, and allow me some slack around a proposed Court order. Rather, allow me to quote to the best of my ability, a Supreme Court Concurrance with 5th Circuit that basically states: "A State court errs when the judge, for any reason recuses himself from a pending criminal trial subsequent to pleading, arraignment, indictment and the selection of a jury, and the citizen harmed by such a recusal is held without bond. The time for redress in the federal Courts is within the rights of the accused, and the courts are within their jurisdiction to intercede to protect his/her Constitutional Rights to a reasonable guarantee of appearance when summoned," or facsimile. Perhaps yourself or your law clerk can locate the proper terminology, or perhaps you need no clarification. In any event, Sir, my wife and I own twenty one acres

yourself in a like situation, to get me free from what is a danger to myself and my health, now. God will bless you for your efforts and good judgement in any event, and I shall thank you in advance for whatever you do on my behalf. Outside I can retake control of my life, on which I've never before depended on another person for help.

Most respectfully presented by:

H.L. Watkins, Jr.,
Lt Col. USA RET.
El Camino Real - Box #59
San Benito, Tx 78586
Tel/fax 956 399-2312
EMAIL @ hlwatkinsjr@juno.com.

One more thing Judge Crosby. The attorney you call might be advised that he will be given the option to follow up my release with a civil action under title 42.

United States District Court
Southern District of Texas
RECEIVED
JUN 2 2 2001
Michael N. Milby, Clerk