UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 2 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| H.L. WATKINS, JR.<br>    Plaintiff, Pro Se | * |
| v. | |
| JAMES Y. SITGREAVES,<br>JOHN CARRINGTON,<br>ALFREDO PADILLA,<br>LUIS V. SAENZ,<br>ELOY CANO,<br>FERNANDO MANCIAS,<br>HIDALGO COUNTY,<br>MIGDALIA LOPEZ,<br>FILEMON V. VELA,<br>FIDENCIO GARZA, JR.,<br>HILDA G. TAGLE,<br>JOHN W. BLACK,<br>JOHN D. RAINEY,<br>W. EUGENE DAVIS,<br>HAROLD DeMOSS, JR.,<br>JAMES L. DENNIS,<br>MARCEL C. KNOTZON,<br>KEITH B. ELLISON,<br>GEORGE P. KAZEN,<br>LYNN H. HUGHES,<br>STATE BAR OF TEXAS,<br>MERVYN M. MOSSBACKER, U.S.<br>ATTORNEY and U.S. ATTORNEY<br>GENERAL JANET RENO,<br>    Defendants | * CIVIL ACTION NO. B-00-112<br><br><br><br><br>* |

<u>DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE
AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL
RULES OF CIVIL PROCEDURE</u>

TO THE HONORABLE JUDGE OF SAID COURT:

<u>DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>                    1

COMES NOW ALFREDO PADILLA, Defendant, in the above numbered and referenced cause and files this Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure and moves for dismissal and/or summary judgement against Plaintiff H.L. WATKINS, JR., and in support thereof would show unto the Court as follows:

I.

## Case Background

Plaintiff H.L. Watkins, Jr. has filed this complaint seeking to collaterally attack a previous state conviction for a 1990 arrest for intentionally and knowingly investing funds to further the commission of the offense of aggravated possession of marijuana, subsequent guilty plea and sentence of probation imposed in Cause Number 90-CR-814-C before the 197th District Court of Cameron County, Texas. Watkins seeks monetary damages of $750,000.00 from Defendant Padilla and additionally seeks $300,000.00 in attorney fees from Defendant Padilla.

Heretofore Plaintiff H.L. Watkins had filed a cause of action in Cause Number B-95-183 wherein was an identical lawsuit involving the same Plaintiff and Defendant attempted to collaterally attack the Plaintiff's conviction in state court. Cause Number B-95-183 was dismissed with prejudice and order restricting the filing of future suits signed by order dated September 25, 1998, and signed

DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE                    2

by the Honorable Judge Hilda Tagle.    Dissatisfied with the dismissal ruling and in contradiction to the Judge Hilda Tagle's order Mr. Watkins has filed the present lawsuit involving the same parties and same allegations as those filed in B-95-183 with the exception that additional judges and court personnel who granted the dismissal have been joined as Defendants.

## II.

### Standard of Review

Rule 12(b)(1) permits dismissal of an action when the court lacks subject matter jurisdiction.    A motion under Rule 12(b)(1) may be decided on any of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the records; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. <u>Barrera-Montenegro v. United States</u>, 74 F.3rd 657, 659 (5th Cir. 1996); <u>Fleischer v. United States Dept. of Veteran Affairs</u>, 955 F.Supp. 731, 733-34 (S.D. Tex. 1997).

A motion under Rule 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief, <u>Home Builders Association v. City of Madison</u>, 143 F.3rd 1006 (5th Cir. 1998); <u>Benton v. United States</u>, 960 F.2D 19, 21 (5th Cir. 1992). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case, <u>Home Builders Association vs. City of</u>

Madison , 143 F.3D 1006 (5th Cir. 1998); Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3rd 1182, 1187 (2nd Cir. 1996). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting subject matter jurisdiction, St. Paul Reinsurance Company, LTD. v. Greenberg, 134 F3rd 1250, 1253 (5th Cir. 1998); Rodriguez vs. Texas Commission on the Arts, 992 F.Supp. 876, 879 (N.D. Tex. 1998).

In a ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the pleadings as true and examine whether the allegations state a claim sufficient to avoid dismissal, Grisham v. United States, 103 F.3d 404, 25 (5 Cir. 1997). A court may grant a Rule 12(b)(6) motion only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations, Kansa Reinsurance Co. v. Congressional Mortg. Corp., 20 F3d 1362, 1366 (5th Cir. 1994). While the court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the Plaintiff. Moreover when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) is appropriate.

## III.

### Discussion

The Plaintiff's cause of action should be dismissed as against the Defendant ALFREDO PADILLA.

Defendant PADILLA would attach hereto in support of the

DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE                4

motion to dismiss the following:

a) Magistrate Judge John Black's Report and Recommendation filed in Cause Number B-95-183 which is marked as Exhibit "1" and included herein as if copied verbatim;

b) Final Order signed by Honorable Judge Hilda Tagle on September 23, 1998, in Cause Number B-95-183 which is marked as Exhibit "2" and included herein as if copied verbatim.

c) Affidavit of Alfredo Padilla which is attached and marked as Exhibit "3" and included herein as if copied verbatim.

Defendant ALFREDO PADILLA would show that the Petition filed in Cause Number B-95-183 is almost identical in form and content as the rambling petition in Cause Number B-00-112. Having alleged the same facts and requesting the same relief the Plaintiff's claims should be barred.

Attention is drawn to attached Exhibit "1", page 9, wherein the Honorable Magistrate Judge John Black found that Defendant Padilla was court appointed to represent Plaintiff and that the last legal representation by Defendant Padilla concerning Plaintiff took place in December 1990 when the Plaintiff was sentenced. All activities complained by Plaintiff against Defendant Padilla took place in 1990, pursuant to Plaintiff's Original Petition which is marked as Exhibit "4" and included herein as if copied verbatim. When reviewing Plaintiff claims in Plaintiff's Original Petition

DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE                    5

limitations has run and the case should be dismissed on grounds that the petition was filed past the statute of limitation period.

The Court's further attention is draw to Exhibit "2" which is Final Order issued by Honorable Judge Hilda Tagle dismissing Cause Number B-95-183, dismissing Plaintiff's cause of action with prejudice. There exists no order setting aside Honorable Judge Hilda Tagle's order to dismiss.

Plaintiff Watkin's complaint on its face should be dismissed with prejudice. Plaintiff's identical cause of action in B-95-183 has been dismissed with prejudice and this case should also be dismissed on the same grounds, including limitations.

IV.

## Motion for Summary Judgment

Defendant ALFREDO PADILLA is entitled to judgment as a matter of law because the uncontradicted summary judgment evidence establishes as a matter of law that the State of Texas has ruled that the Plaintiff herein does not have the right to pursue the relief requested in the original Petition as the same is against public policy.

Furthermore the Defendant ALFREDO PADILLA is entitled to summary judgment because the present lawsuit was filed past the statute of limitations and Plaintiff's cause of action is improper pursuant to the Texas Civil Practice & Remedies Code in that Plaintiff in his petition has readily admitted in his recitation of facts that the lawsuit was filed outside of the period allowed for

DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE                6

the filing of this types of lawsuits.

V.

In support of this motion, Defendant relies on the pleadings, including Plaintiff's Original Petition and the annexed affidavits of ALFREDO PADILLA.

More particularly the Court would draw attention to <u>Peeler v. Hughes & Luce</u>, 909 S.W.2d 494 (Tex. 1995), wherein the Texas Supreme Court has ruled that a person's criminal conduct is, as a matter of law, the sole proximate or producing cause of the conviction and damages such that a negligence claim can not be brought absent a showing that the Plaintiff was exonerated from the criminal conviction.

The Supreme Court has ruled that public policy prohibits convicts from profiting from their illegal conduct and that allowing civil recovery for convicts impermissibly shifts responsibility from the crime away from the convict. The opportunity to shift much, if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys drastically diminishes the consequences of the convict's criminal conduct and seriously undermines the system of criminal justice. The Supreme Court in <u>Peeler</u> proceeded to rule that as a matter of law it is the illegal conduct rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction.

Defendant Padilla would further show that the Plaintiff has

<u>DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>                7

failed to set aside his conviction and was not granted a new trial as the same is not alleged to in Plaintiff's petition.

Upon review of the Plaintiff's Original Petition it is clear that the Plaintiff has failed to show that he has received any post-conviction relief or that he is entitled to any post-conviction relief. Such requirements are required by <u>Peeler</u> and therefore the Defendant Padilla is entitled to summary judgment as a matter of law.

VI.

In support of this motion, Defendant relies on the pleadings, including Plaintiff's Original Petition and the annexed affidavit of ALFREDO PADILLA together with the exhibits attached thereto. More particularly Defendant directs the attention of the Court to the following summary judgment evidence:

a. Plaintiff's Original Petition which was filed by the Plaintiff on June 23, 2000, and marked as Exhibit "4" and included herein as of copied verbatim;

b. Affidavit of Alfredo Padilla with marked as Exhibit "5" and included herein as if copied verbatim showing that the Plaintiff was sentenced on December 3, 1990 ;

The Defendant Padilla is entitled to summary judgment as a matter of law pursuant to Section 16.003(a) of the Texas Civil and Practice Remedies Code.

WHEREFORE Defendant Alfredo Padilla requests that this matter be set for hearing, with notice to Plaintiff, and that the Court

<u>DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>

order the Plaintiff to respond to the Defendant Alfredo Padilla's
Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) of the Federal
Rules of Civil Procedure and Motion for Summary Judgment Pursuant
to Rule 56 of the Federal Rules of Civil Procedure by submission
only and that upon consideration of the evidence presented the
Court grant Defendant Alfredo Padilla's Motion to Dismiss and/or
Motion for Summary Judgment and that judgment be entered in favor
of Defendant Alfredo Padilla and against Plaintiff together with
costs, and for such other and further relief to which Defendant
Alfredo Padilla may show himself entitled.

Respectfully submitted,

ALFREDO PADILLA
Southern District Bar No. 3840
State Bar No. 08125550
1000 E. Van Buren
Brownsville, Texas 78520
(956) 544-7100
Fax (956) 544-0647

DEFENDANT ALFREDO PADILLA'S MOTION TO DISMISS PURSUANT
TO RULE 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL
PROCEDURE AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE                    9



United States District Court
Southern District of Texas
ENTERED

AUG 26 1998

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## - BROWNSVILLE DIVISION -

United States District Court
Southern District of Texas
FILED

AUG 26 1998

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| H. L. WATKINS, JR.<br>AKA HORACE LAMAR WATKINS | § § § | |
| VS. | § § | CIVIL ACTION NO. B-95-183 |
| THE STATE OF TEXAS, ET AL. | § § § | |
| H. L. WATKINS, JR. | § § | |
| VS. | § § § | CIVIL ACTION NO. V-98-0024 |
| DEPUTY COURT CLERK, JUAN BARBOSA, SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION; DISTRICT JUDGE FILEMON B. VELA; MAGISTRATE JUDGE FIDENCIO G. GARZA, JR.; ASS'T U.S. ATTORNEY NANCY L. MASSO; U.S. DEA AGENT, STEVEN BALTHROP; U.S. DRUG ENFORCEMENT ADM.; U.S. ATTORNEY GENERAL, JANET RENO; U.S. DEPARTMENT OF JUSTICE | § § § § § § § § § § § § | |



RECEIVED
SEP 03 1998

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On November 14, 1995, H. L. Watkins, Jr., aka Horace Lamar ("Watkins") filed this *pro se* 42 U.S.C. § 1983 case against the State of Texas. This case was assigned Cause No. B-95-183. Not much happened until February 14, 1997, when Watkins amended his Complaint. The suit is now styled:

H.L. Watkins, Jr., aka Horace Lamar Watkins aka John Watkins vs. Joe Morales, Crispin C. Trevino, Robert Rapp, Eloy Cano, Oscar Ponce, Luis V. Saenz, Cameron County, Texas, Yolanda

De Leon as Cameron County, Texas District Attorney, James Yo Sitgreaves, John Lee Carrington, Alfredo Padilla, The State Bar of Texas, Darrel B. Hester, Fernando Mancias, Robert Flowers, State Commission on Judicial Conduct, Hidalgo County, Texas, Larry Councilman, Steven Balthrop, U.S. Drug Enforcement Agency, Dan Morales, The State of Texas.

Sifting through Watkins Amended Complaint (Docket No. 14) is not without difficulties

> The indictment had never been clearly expressed,
>   And it seemed that the Snark had begun,
> And had spoken three hours, before any one guessed
>   What the pig was supposed to have done.
>                               Lewis Carroll "The Hunting of the Snark"

The underlying incident which provoked this case occurred on June 4, 1990, when Watkins, and Whitfield Palmer were arrested by agents of the Cameron County Drug Enforcement Task Force.

According to the Report of Investigation which is part of the State Court Records, (pp. 28-35) Watkins some time prior to his arrest entered into negotiations with Joe Morales, a member of the Cameron County Drug Enforcement Task Force.  Watkins indicated that he represented a group from Florida which wished to purchase 2000 pounds of marihuana. Negotiations and discussions concerning transportation arrangements continued during May 1990.  By June 4, 1990, Watkins had agreed to purchase 56 pounds at $375.00 per pound.  A meeting was arranged at a gasoline station near La Feria, Texas.  Watkins and Palmer were arrested.  $25,600.00 was seized.  According to the State Court Records which are an exhibit in this case, Watkins and Whitfield Palmer were indicted (Records of State Court Proceedings p. 1) on July 25, 1990, and charged with intentionally and knowingly investing funds to further the commission of the offense of aggravated possession of marihuana.  Watkins who had been arrested on June 4, 1990, had been released on a $25,000.00 personal recognizance bond on June 22, 1990.

2

On October 8, 1990 Watkins pled guilty to illegal investment in state court. On December 3, 1990, he was placed on ten years probation and fined $5,000.00 (see Records of State Court Proceedings pp. 63-66). The judgment was signed by the Hon. Fernando Mancias of Hidalgo County, Texas, who was sitting in place of the Hon. Darrell Hester of the 197th Judicial District Court of Cameron County, Texas.

Watkins conviction and sentence have never been set aside.

In his Amended Complaint, Watkins embarks on an attack on everyone involved in his case, investigators, judges, lawyers, prosecutors, the State Bar of Texas, Drug Enforcement Agency agents, Hidalgo and Cameron Counties, and other agencies. The gravamen of this attack is that Watkins is the victim of a racially and ethnically motivated conspiracy and that he is totally innocent of the charges which were brought against him.

Displeased with the course of the Brownsville case and particularly distressed by a Report and Recommendation (Docket No. 111) prepared by U.S. Magistrate Judge Fidencio Garza recommending dismissal of the claims against Steve Balthrop and Larry Councilman, agents of the Drug Enforcement Administration, Watkins filed a scandalous, vituperative pleading accusing Judge Garza of being racially prejudiced. Watkins continued to file frivolous motions, *e.g.* Docket No. 118 Watkins Motion to Remand Assistant U.S. Attorney's Motion for Correction of Clerical Errors. Watkins was distressed because the government filed a Motion that referred to him in the caption as Homer Lamar Watkins, Jr. In his Motion Watkins refers to "...a non-existent person..." In his own caption, Watkins refers to himself as H.L. Watkins Jr. or Homer Lamar Watkins. This is just one example of the absurdities in this file.

On March 17, 1998, Watkins filed another suit in the United States District Court for the

3

Southern District of Texas, Victoria Division. The allegations in the Victoria case are substantially identical to the Brownsville case with the added fillip of naming the Juan Barbosa, Chief Deputy Clerk of the Brownsville Division, U.S. District Judge Filemon B. Vela and U.S. Magistrate Judge Fidencio G. Garza as defendants. The Victoria case was consolidated with the Brownsville case by an Order signed by U.S. District Judge Hilda G. Tagle.

All of the Defendants have filed dispositive Motions which should be granted for the following reasons.

### THE JUDGES

The Defendants include the following members of the judiciary, both state and federal:

1. Eloy Cano, Justice of the Peace

2. State District Judge Darrell B. Hester

3. State District Judge Fernando Mancias

4. United States District Judge Filemon B. Vela

5. United States Magistrate Judge Fidencio G. Garza

The judges have raised the defenses of limitations (this defense is not raised by the federal judges) and judicial immunity in their dispositive Motions. (Cano Motion Docket No. 23, Mancias Motion, Docket No. 30, Mancias and Hester Motion Docket No. 32, Hester Amended Motion Docket No. 41; Judges Vela and Garza Motion to Dismiss, Victoria file Docket No. 14).

The incidents complained of by Watkins occurred during a period of time from June 4, 1990, when Watkins was arrested through December 3, 1990, when he pled guilty and was sentenced. His suit was filed on November 14, 1995. Judges Cano, Hester and Mancias were added as parties on February 14, 1997. It is axiomatic that limitations in § 1983 cases is governed by state law *Gartrell*

4

*v. Gaylor*, 981 F.2d 254, 256-257 (5th Cir. 1993) . In Texas, limitations for claims such as those made by Watkins is two years. Tex. Civ. Prac. and Rem. Code Ann. § 16.003(a). The limitations defense is good.

Additionally, all the judges, state and federal, are protected by the doctrine of judicial immunity. All of the acts complained of by Watkins were done by the judges in the performance of their judicial duties. Judicial immunity protects all the judges from Watkins claims. *Boyd v. Biggers*, 31 F.3d 279, 284-285 (5th Cir. 1994); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir. 1995)

Watkins claims against all the judges should be dismissed on the grounds of judicial immunity. and, with respect to the state judges, limitations.

THE TEXAS STATE AND CAMERON AND HIDALGO COUNTY OFFICIALS AND

AGENCIES

The following Texas, Cameron and Hidalgo County officials and agencies have been named as parties by Watkins:

1. The State of Texas

2. Cameron County, Texas

3. Hidalgo County, Texas

4. Texas Attorney General Dan Morales.

5. Former Cameron County Attorney Luis Saenz

6. Cameron County Attorney Yolanda De Leon

7. Former Assistant Cameron County Attorney Oscar Ponce

8. State Commission on Judicial Conduct

9. State Bar of Texas

5

10. Robert Flowers, Executive Director State Commission on Judicial Conduct

11. Robert Rapp, an officer assigned to the Cameron County Drug Enforcement Task Force

12. Crispin C. Trevino, an officer assigned to the Cameron County Drug Enforcement Task Force

13. Joe Morales, an officer assigned to the Cameron County Drug Enforcement Task Force

These defendants have filed dispositive Motions (State of Texas Docket No. 7; Cameron County, Texas Docket No. 16; Luis Saenz Docket No. 20; State Bar of Texas Docket No. 27; Joe Morales, Oscar Ponce, Yolanda De Leon Docket No. 31; Robert Rapp Docket No. 34; Crispin C. Trevino, Docket No. 37; Hidalgo County, Texas Docket No. 40; The State of Texas, Robert Flowers, Dan Morales, The State Commission on Judicial Conduct Docket No. 41).

With respect to the State of Texas, the State Bar of Texas, the Commission on Judicial Qualifications, Watkins has a serious problem of constitutional dimensions. All of these agencies and individuals have sovereign immunity. The Eleventh amendment to the U.S. Constitution bars this suit in the absence of a waiver of this immunity. *Alabama v. Pugh*, 438 U.S. 781 (1978).

Limitations bars any claims Watkins has against these individuals and entities. He filed his claims against these individuals and entities over six years after the occurrence he complains about.

Additionally, Watkins faces a serious substantive problem. The Supreme Court has held that in order to recover § 1983 damages for an unconstitutional conviction or any unlawful activity which would render a conviction or sentence invalid, the conviction must have been set aside. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994) Watkins conviction has not been set aside. The claims against all the state agencies, individual state officers, counties and county officers and employees should be dismissed.

6

## FEDERAL OFFICIALS AND AGENCIES

Watkins has sued the Attorney General of the United States, Janet Reno, The Department of Justice, the Drug Enforcement Administration, Assistant United States Attorney Nancy Masso, Juan Barbosa, Deputy District Clerk, and Agents Councilman and Balthrop of the U.S. Drug Enforcement Administration. U.S. Magistrate Judge Fidencio G. Garza submitted a Report and Recommendation on November 24, 1997, recommending that the case against Councilman and Balthrop be dismissed. (Docket No. 111)

The defendants in the Victoria case have filed a Fed. R. Civ. P. 12(b)(1)(6) Motion to Dismiss (Docket No. 1 in the Victoria case file) .

Watkins complaints against Assistant United States Attorney Masso are offensive and legally insufficient. He seems irate that she raised a limitations defense to his § 1983 claims based on the black letter rule that the statute of limitations in § 1983 cases is drawn from the state limitations statutes. All of Watkins complaints against the Drug Enforcement Administration and it agents took place in June 1990. Watkins claims against them, by his own admission, page six of Watkins Original Petition (docketed as No. 1 in the Victoria case) were filed on February 14, 1997. In any event, Ms. Masso is entitled to absolute immunity for actions taken in representing the government. *Saunders v. Bush,* 15 F.3d 64, 67 (5th Cir. 1994)

Watkins claims against Deputy Clerk Barbosa are based on his failure to issue a writ of execution. The short answer to this claim is that there are no judgments which would give rise to the issuance of a writ of execution. Fed. R. Civ. P. 69. The Clerk, acting under the authority of the judge, as Watkins alleges in his pleadings (p. 11 Victoria Petition), is entitled to absolute immunity. *Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir. 1981)

7

The Clerk is entitled to qualified immunity as well. Watkins allegations against the Clerk consist of nothing more than a vague diatribe that the Clerk was involved in a conspiracy. This type of non specific allegation will not defeat a claim of qualified immunity. *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir. 1995)

The Attorney General, Janet Reno should be dismissed on two grounds. Watkins only claims against her, found on p. 15 of his Victoria petition, are based on the doctrine of respondeat superior. In fact, p.15 of Watkins Victoria petition is styled "RESPONDEAT SUPERIORS." Watkins alleges no acts on the part of General Reno which would make her liable to him. There is no liability in a *Bivens v. Six Unknown Fed. Agents,* 403 U.S. 388 (1971) case under the doctrine of Respondeat Superior. *Abate v. Southern Pacific Transportation Co.,* 993 F.2d 107, 110 (5th Cir. 1993)

Watkins claims against the U.S. Department of Justice and The Drug Enforcement Administration should be dismissed on several grounds:

First: Watkins did not comply with the administrative provisions of the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2675(a) which require presentation of a claim for tort damages within two years of the accrual of a cause of action. This is a jurisdictional requirement which Watkins has not met. *United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1306-1307 (5th Cir. 1987)

Second: As mentioned with respect to the claims against the Attorney General, the doctrine of Respondeat Superior is not available to a Plaintiff in a *Bivens* case.

These claims should be dismissed.

8

## THE LAWYERS

Watkins has sued three lawyers, Alfredo Padilla, John Carrington and James Sitgreaves. All have filed responsive pleadings. (Sitgreaves Docket No. 21; Padilla Docket No. 25, Carrington Docket No. 26)

Mr. Padilla was Watkins court appointed attorney. In his answer he raises a defense of limitations.

The last legal matter concerning Watkins with which Mr. Padilla dealt took place in December 1990, when Watkins was sentenced. Watkins complaints against Padilla are found on pp. 29 and 35 of the Amended Complaint (Docket No. 14). All these activities took place in 1990. Limitations ran long before the Amended Complaint was filed against Padilla. It should be dismissed.

The complaints against Mr. Carrington are found on pp. 24-25 of Watkins First Amended Complaint. They relate to matters which took place in 1990. They are barred by limitations and the case against Carrington should be dismissed. .

The complaints against Mr. Sitgreaves are found on pp. 19-21 of the First Amended Original Complaint. They all deal with matters which took place on June 4, 1990, and are clearly barred by limitations. By Watkins own admission, Mr. Sitgreaves never had an attorney client relationship with him with respect to the criminal matter for which Watkins was prosecuted. The case against Mr. Sitgreaves should be dismissed.

## PENDING MOTIONS

The list of pending motion filed by Watkins is extensive. None have any merit. They should all be summarily denied.

9

## FURTHER PROCEEDINGS

It is recommended that the Order dismissing Watkins case advise him that in the event he files more cases dealing with the events made the basis of the two he has filed in Brownsville and Victoria that they will be dismissed and monetary sanctions be imposed. *Mendoza v. Lynaugh*, 989 F.2d 191 (5th Cir. 1993).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 26th day of August 1998.

John Wm. Black
United States Magistrate Judge

10

SEP 2 5 1998

Michael N. Milby, Clerk of Court
Deputy Clerk

United States District Court
Southern District of Texas
FILED

SEP 23 1998

Michael N. Milby, Clerk of Co

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## - BROWNSVILLE DIVISION -

| | | |
|---|---|---|
| H. L. WATKINS, JR. | § | |
|     AKA HORACE LAMAR WATKINS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-95-183 |
| | § | |
| THE STATE OF TEXAS, ET AL. | § | |
| | § | |
| | § | |
| H. L. WATKINS, JR. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. V-98-0024 |
| | § | |
| JUAN BARBOSA, ET AL. | § | |

### FINAL ORDER

1.    After *de novo* review of the entire file, the Magistrate's Report and Recommendation of August 26, 1998 is **ADOPTED.**

2.    The causes of action against all defendants are **DISMISSED WITH PREJUDICE.**

3.    Future filings by PLAINTIFF HOMER LAMAR WATKINS arising from his 1990 arrest and conviction subject HOMER LAMAR WATKINS to sanctions pursuant to Fed. R. Civ. P. Rule 11.

4.    All pending Motions in this case filed by PLAINTIFF HOMER LAMAR WATKINS are **DENIED.**

DONE in Brownsville, Texas, on this 23 day of September 1998.

_____
Hilda G. Tagle
United States District Judge

EXHIBIT "2"

AFFIDAVIT OF ALFREDO PADILLA

THE STATE OF TEXAS:

COUNTY  OF CAMERON:

BEFORE ME THE UNDERSIGNED AUTHORITY on this day personally appeared ALFREDO PADILLA, who upon his oath stated as follows:

"My name is Alfredo Padilla.  I am an attorney licensed by the State of Texas to practice law and have assigned to me Texas State Bar Card number 15404600.  I have been licensed to practice law by the Texas Supreme Court since November, 1978, with authority to practice before all courts of the State of Texas.

I am the attorney named as Defendant in Cause Number B-00-112.  I am the custodian of the records of the Law Offices of Alfredo Padilla.  Attached hereto and marked as Exhibit "1" is a true and correct copy of the Magistrate Judge John Black's Report and Recommendation which is filed in Cause Number B-95-183 and styled H.L. Watkins, Jr. v. James Y. Sitgreaves, et al.  Attached hereto and marked as Exhibit "2" is a true and correct copy of Honorable Judge Hilda Tagle's Final Order signed on September 23, 1998, in Cause Number B-95-183.

This copies of documents are records which are kept by Alfredo Padilla in the regular course of business and it was in the regular course of business of Alfredo Padilla with knowledge of the  act, event, condition, opinion or diagnosis recorded to make

**AFFIDAVIT OF ALFREDO PADILLA**                                              1

EXHIBIT "3"

the record thereof.    The record attached hereto is an exact
duplicate copy of the original.

ALFREDO PADILLA

SUBSCRIBED AND SWORN TO BEFORE ME by the said ALFREDO PADILLA,
on this the _11th_ day of July, 2002.

Notary Public, State of Texas

ANITA S PADILLA
NOTARY PUBLIC
State of Texas
Comm Exp. 02-16-2005

**AFFIDAVIT OF ALFREDO PADILLA**                                        2

# IN THE 103RD JUDICIAL DISTRICT COURT
## COUNTY OF CAMERON
## STATE OF TEXAS

| | | |
|---|---|---|
| H.L. WATKINS, JR., | [] | CIVIL ACTION NO: |
| Plaintiff, Pro Se. | [] | Jury |
| V | [] | |
| JAMES Y. SITGREAVES, & | [] | |
| JOHN CARRINGTON, & | [] | |
| ALFREDO PADILLA, & | [] | |
| LUIS V. SAENZ, & | [] | |
| ELOY CANO, & | [] | |
| FERNANDO MANCIAS, & | [] | |
| HIDALGO COUNTY, & | [] | |
| MIGDALIA LOPEZ, & | [] | |
| FILEMON B. VELA, & | [] | |
| FIDENCIO GARZA, JR. & | [] | |
| HILDA G. TAGLE, & | [] | |
| JOHN W. BLACK, & | [] | |
| JOHN D. RAINEY, & | [] | |
| W. EUGENE DAVIS, & | [] | |
| HAROLD DeMOSS, JR. & | [] | |
| JAMES L. DENNIS, & | [] | |
| MARCEL C. NOTZON, & | [] | |
| KEITH P. ELLISON, & | [] | |
| GEORGE P. KAZEN, & | [] | |
| LYNN N. HUGHES, & | [] | |
| STATE BAR OF TEXAS, & | [] | |
| ROBERT FLOWERS, & | [] | |
| STATE COMMISSION ON | [] | |
| JUDICIAL CONDUCT, & | [] | |
| STATE OF TEXAS, & | [] | |
| MERVYN N. MOSSBACKER, & | [] | |
| U.S. ATTORNEY, & | [] | |
| U.S. ATTY. GEN. JANET RENO, | [] | |
| Defendants. | [] | |

1

FILED 11:45 O'CLOCK __ M
AURORA DE LA GARZA DIST. CLERK

JUN 23 2000

DISTRICT COURT OF CAMERON COUNTY, TEXAS

EXHIBIT "4"

## _PLAINTIFF'S ORIGINAL PETITION_:

2000-06-2635-E

TO THE HONORABLE JUDGE OF THIS COURT:

COMES THE PLAINTIFF, H.L. WATKINS, JR. to this Court, pursuant to Texas Rules of Court, Rule 1, seeking a just, fair, equitable adjudication of the Rights of litigants under established principles of substantive law, with as great expedition as possible, due to his age and health. Such has been denied in the 197th Judicial District Court, and in the entire U.S. District Court, Southern District of Texas, as well as in the 5th Circuit Court of Appeals.

The defendant judges in this Civil Action will be prosecuted as private citizens, not as state of Texas or U.S. District Court judges and maginstrate judges, in that Plaintiff can and will prove each of the defendant judges acted outside their jurisdiction by perjuring Court documents to justify denying his 5th Amendment Rights to Due Process of the Laws, and in doing so are guilty of obstruction of justice to protect a friend or another dishonest and corrupt judge. Plaintiff will further prove to this Court that each of the judges acted viciously and with malice aforethought. This is possible by utilizing their own documents, including, but not limited to, those perjured.

## THE LAWS:

The Federal Laws, state of Texas and U.S. District Court laws that govern this Civil Action, are as follows:
1. The United States Constitution, and more specifically, the 1st, 4th, 5th, 6th, 8th and 14th Amendments, and;
2. Title 42 USC, Section 1983, and;
3. Title 42 USC, Section 1986, and;
4. Title 42 USC, Section 1988, and;
5. Texas Rules of Civil Procedure, and;
6. Federal Rules of Civil Procedure, and;
7. Laws established as precedents in the Texas Appellate Courts, and;
8. Laws established as precedents in the Supreme Court of Texas, and;
9. Laws established as precedents in the U.S. Appellate Courts, and;
10. Laws established as precedents in the United States Supreme Court.

11. Laws established in the Code of Conduct for U.S. Judges, Canons 1, 2 and

A. Toward that end, Your Honor, Plaintiff would ask the Court's indulgence for the benefit of lawyers who will be defending in this Cause of Action, and will quote for them the following:
a. THE SUPREME COURT HAS RULED THAT A STATE IMMUNITY STATUTE IS VALID WHEN APPLIED TO TORT CLAIMS ARISING UNDER STATE LAW.  HOWEVER, SUCH A STATUTE <u>WOULD NOT CONTROL A</u> <u>*SECTION 1983 CLAIM, EVEN IF IT WAS BEING ASSERTED*</u> <u>*IN STATE COURT.*</u> See Martinez v California.

b. As to County and State employees, see Maine v Thiboutot, 448 US 1 (1980), a Section 1983 Civil Action, the Court determined: EVERY PERSON WHO, UNDER COLOR OF LAW OF ANY STATE, ORDINANCE, REGULATION, CUSTOM OF USAGE, OF ANY STATE OR TERRITORY...SUBJECTS, OR CAUSES TO BE SUBJECTED, ANY CITIZEN OF THE UNITED STATES OR OTHER PERSON WITHIN THE JURISDICTION THEREOF TO THE DEPRIVATION OF ANY RIGHTS, PRIVILEGES OR IMMINUTIES SECURED BY THE CONSTITUTION AND LAWS, SHALL BE LIABLE TO THE PARTY INJURED.

c. As to judges: In Pulliam v Allen, the Supreme Court ruled: JUDICIAL IMMUNITY DOES NOT BAR PROSPECTIVE INJUNCTIVE RELIEF AGAINST A JUDICIAL OFFICER ACTING IN HIS OR HER JUDICIAL CAPACITY. THE COURT ALSO RULED IN THE SAME CASE THAT JUDICIAL IMMUNITY IS NO BAR TO THE AWARD OF ATTORNEY'S FEES UNDER TITLE 42 USC SECTION 1988.

d.  Also, as to judges: In Davis v Baless, 70 F.3d 367 373 (5th Cir 1995), the Court decided: A JUDGE'S JURISDICTION IS CONSTRUED BROADLY, AND A JUDGE IS NOT DEPRIVED OF IMMUNITY BECAUSE THE ACTION HE TOOK WAS IN ERROR, WAS DONE MALICIOUSLY, OR WAS IN EXCESS OF HIS AUTHORITY; RATHER, HE WILL BE SUBJECT TO LIABILITY ONLY WHEN HE HAS ACTED IN THE CLEAR ABSENCE OF ALL JURISDICTION.  Further, ABSOLUTE IMMUNITY

3

EXTENDS TO ALL JUDICIAL ACTS WHICH ARE PERFORMED IN THE
CLEAR ABSENCE OF ALL JURISDICTION. Adams v McIhany, 764, F.2d
294, 297, (5th Cir. 1985). In addition, A JUDGE'S IMMUNITY IS NOT
PIERCED BY ALLEGATIONS THAT HE CONSPIRED WITH OTHERS
TO DO AN ALLEGEDLY UNLAWFUL ACT SO LONG AS THE ACT IS
WITHIN HIS JUDICIAL POWERS.

f. The Fifth Circuit has set forth four factors to determine if an act is
"judicial". First, whether the precise act complained of is a **normal judicial**
**function**. Second, whether the acts occurred in the courtroom or appropriate
adjunct room, such as a judge's chambers. Third, whther the controversy
centered around a case pending before the court. And forth, whether the acts
arise directly out of a visit to the judge in his official capacity. Adams, 764,
F.2d at 297.

g. A presentation of the facts will leave no question in the mind of this Court
that perjuring a Court document and abusing the power of the bench for the
purpose of obstructing justice to aid a friend, by denying a citizen his or her
Constitutional Rights, is non-judicial in nature.

h. Furthermore, every judge takes the oath of office to :UPHOLD, PROTECT
AND DEFEND THE CONSTITUTION OF THE UNITED STATES, which
requires no embilishment.

I. As tofederal employess and the question of "qualified immunity " under the
doctrine established by the Supreme Court in Harlow v Fitzgerald, 457 US
800 818 (1982): GOVERNMENT OFFICIALS PERFORMING OFFICIAL
FUNCTIONS ARE SHIELDED FROM LIABILITY FOR CIVIL DAMAGES
INSOFAR AS THEIR CONDUCT DOES NOT VIOLATE CLEARLY
ESTABLISHED CONSTITUTIONAL RIGHTS OF WHICH A
REASONABLE PERSON WOULD HAVE KNOWN. WHETHER AN
OFFICIAL CAN BE HELD PERSONALLY LIABLE FOR AN
ALLEGEDLY UNCONNSTITUTIONAL OFFICIAL ACTION TURNS ON
THE OBJECTIVE LEGAL REASONABLENESS OF THE ACTION AT
THE TIME IT OCCURRED. Anderson v Creighton, 483 US 635, 640 (1987).
ONCE A DEFENDANT PLEADS THE DEFENSE OF QUALIFIED

IMMUNITY, THE TRIAL JUDGE MUST FIRST DETERMINE WHETHER
THE PLAINTIFF HAS ALLEGED A CONSTITUTIONAL VIOLATION, AT
ALL, UNDER CURRENT LAW, AND IF THE PLAINTIFF HAS DONE SO,
THE JUDGE THEN DETERMINES WHETHER THE DEFENDANT'S
ACTIONS WERE OBJECTIVELY REASONABLE WITH REFERENCE TO
CLEARLY ESTABLISHED LAW AT THE TIME OF THE CONDUCT IN
QUESTION. See Cronn v Buffington, 150 F.3d 538 451 (5th Circuit 1998).


j.   Further as to qualified immunity, see Gomez v Toledo, 100 Supreme Court
1920 (1980), as standing for the proposition that " A DEFENDANT IN A
CIVIL RIGHTS ACTION HAS THE BURDEN OF PLEADING AND
PROVING GOOD FAITH". DeVasto v Faherty F2d 859, 865 1st Cir, 1981).
FURTHER, THE SUPREME COURT HAS ASSERTED THAT SEVERAL
COMMENTS ARE IN ORDER IN LIGHT OF GOMEZ V TOLEDO.  FIRST,
EVEN THOUGH JUSTICE REHNQUIST POINTS OUT IN HIS
CONCURRING STATEMENT, THE COURT'S OPINION ADDRESSES
ONLY "THE BURDEN OF PLEADING ISSUE". NEVERTHELESS, ITS
REASONING IS EQUALLY APPLICABLE TO PLACING THE BURDEN
OF PROOF ON THE 1983 DEFENDANT AS WELL.  SECOND, WHILE
GOMEZ HELD THAT THE ABSENCE OF QUALIFIED IMMUNITY
NEED NOT BE PLEADED BY A 1983 PLAINTIFF IN ORDER TO STATE
A CAUSE OF ACTION, A PLAINTIFF WHO SEEKS PUNITIVE
DAMAGES SHOULD ALLEGE IN THE COMPLAINT THE STATE OF
MIND OF THE DEFENDANT, WHICH IS APPROPRIATE FOR
RECOVERY OF SUCH DAMAGES. See also Section 4.08 of the text on
punitive damages.

k. Also, as to qualified immunity: QUALIFIED IMMUNITY PROTECTS
ALL FEDERAL EMPLOYEES, SAVE THOSE WHO ARE PLAINLY
INCOMPENTENT OR WHO KNOWINGLY VIOLATE THE LAW. Malley
v Briggs, 475 US 335, 341 (1986).

l.  As to qualified immunity for Defendant U.S. Attorney General, Janet Reno.
In Mitchel, 105 Supreme Court at 2814, Defendant Reno is entitled to
qualified immunity: AS LONG AS HER ACTIONS (or lack thereof) DO

NOT VILOATE CLEARLY ESTABLISHED STATUTORY OR
CONSTITUTIONAL RIGHTS OF WHICH A REASONABLE PERSON
WOULD HAVE KNOWN.

m.  Finally as to qualified immunity, the Supreme Court has determined: THE
QUALIFIED IMMUNITY TEST IS AN AFFIRMATIVE DEFENSE AND
AS SUCH IS ***NOT RELEVENT*** TO THE EXISTENCE OF A PRIMA
FACIE 1983 CAUSE OF ACTION.

### JURISDICTION AND VENUE:

Jurisdiction in this Civil Action is vested in this or any other State of Texas
District Court by virtue of the    fact Plaintiff was injured in the State of Texas,
regardless of the point of origin.  Plaintiff's Rights under the laws of the
United States have been denied in on-going event in the state of Plaintiff's
residence, where all defendants must defend their illegal and irresponsible, if
not criminal, actions.

### PERTINENT BACKGROUND INFORMATION:

1. On 4 June, 1990, a Cameron County, Texas Drug Enforcement Task Force
agent Joe or Jose' Morales, planted illegal contraband in Plaintiff's vehicle,
and admitted as much in his report of 12 June, 1990. Such illegal acts violate
the 14th Amendment. See ENTRAPMENT DECISION, Sorrels v United
States, 287, U.S. 446-449.


2. Plaintiff was arrested and his vehicle was searched and seized without
warrants by the Cameron County, Texas, Drug Enforcement Task Force, et al;
who surrounded the Plaintiff with guns drawn, yelling: "GET YOUR HANDS
UP OR WE'LL SHOOT". This happened shortly after he'd sold a pickup
truck to a small time drug dealer from Florida, but whose title was still in
Plaintitt's name. Section 1983, Art. 174 states: "POLICE OFFICERS
BRANDISHING A GUN
WITHOUT PROVOCATION AND THREATENING TO SHOOT ***SHOCKS***
***THE CONSCIENCE AND CONSTITUTES A VIOLATION OF A***

## *CITIZENS RIGHT TO LIBERTY UNDER THE FOURTEENTH AMENDMENT.*

3.The arresting officers then denied the Plaintiff his prescription heart medications for that day, which were in a bank bag with the money he'd been paid for the vehicle, ***SOME OF WHICH WAS STOLEN BY THE COPS***. Pursuant to the Federal Civil Rights Acts, art: 161: Prisoners freedom from cruel and unusual punisment, the Supreme Court states: IT IS OBDURACY AND WANTONESS, NOT INADVERTENCE OR ERROR IN GOOD FAITH THAT CHARACTERIZE THE CONDUCT PROHIBITED BY THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE, WHETHER THAT CONDUCT OCCURS IN CONNECTION WITH ESTABLISHING CONDITIONS OF CONFINEMENT, ***SUPPLYING MEDICAL NEEDS***, OR RESTORING OFFICIAL CONTROL OVER THE CELLBLOCK.

During the night of 4 June, 1990 while Plaintiff was being held in the Harlingen, Texas, City Jail without the benefit of medications, Plaintiff suffered an attack of angina, a heart disease that is activated by stress and anxiety, cold temperatures and fear for his life. All of these factors were present - an extremely low temperature in the cellblock, supposedly to lower the arid smell of urine and vommit; Plaintiff was dressed in a short sleeve silk shirt and imprisoned with Mexicans who'd been arrested for drunkeness and fighting.

4. Earlier in the Harlingen jail, an illiterate jail guard was also the booking officer, who was shown a valid Texas driver's license and Plaintiff's Social Security card, as ID. Not satisfied with the name H.L. WATKINS, JR., he demanded to know Plaintiff's father's first and middle names. He was informed that the name he was looking at belonged to the man who gave it to him, to which he replied: "LOOK, YOU F....ING RINGO, I AIN'T GONNA ASK YOU AGAIN - WHAT'S YOUR PAPPA'S FIRST AND MIDDLE NAME. I CAN SEE AND READ JR ON YOUR NAME, SO YOU WERE NAMED AFTER YOUR PAPA". He was given the name HORACE LAMAR, the first and middle name of the Reverend Doctor Horace Lamar Watkins, a Methodist minister in the state of Texas over forty years: Chief of Chaplains in the 42nd Division during World War One, in France. · While

7

rendering last rites to the dead and dying; he was decorated with the Silver Star for GALLANTRY IN ACTION, WHILE WOUNDED AND BLEEDING, by Brigadier General Douglas MacArthur. He served as the Associate Professor of Theology at Southern Methodist University during the 1930s and early forties. And finally. Bishop of the Southern Methodist Church, Fifth Conference, in Austin, and volunteer Chaplain to the Texas House of Representatives.  The following morning, 5 June, 1990, the above name appeared as being an arrestee in a "drug bust" in the so-called Harlingen newspaper that leaves the Valley by auto, RV, bus, truck and airplanes, to every known corner of the state where this man preached the gospel of Jesus Christ and was revered by his peers as an example of true Christian living. His good name, honor, integrity and impeccable reputation, plus that of his favorite son were destroyed by virtue of the stupidity of the arresting officers and the jail guard, et al.

5. Also on 5 June, 1990, after returning from the Hospital, Plaintiff was taken before Justice of the Peace Eloy Cano, who had no charges nor a single piece of paperwork - only a legal tablet and a pencil. Two of the arresting officers were with him, and Cano asked them how much of a bond they wanted.  One of them said: THAT'S YOUR DECISION, YOUR HONOR. THE MAN WAS CAUGHT WITH MARIJUANA IN HIS PICKUP, AND THE MONEY WITH WHICH TO PAY FOR IT WAS FOUND IN THE CAB OF THE VEHICLE, or facsimile. Thus,  Cano set two bonds; fifty and seventy five thousand dollars, respectively.  Plaintiff informed Cano that he and his wife owned a twenty one acre tract of land in Cameron County at the time, and asked for a personal recognizance bond. He refused and set two excessive bonds, even for a murderer. The Eighth Amendment states: EXCESSIVE BAIL SHALLNOT BE REQUIRED, NOR EXCESSIVE FINES IMPOSED, NOR CRUEL AND UNUSUAL PUNISHMENTS INFLICTED. For this malicious act of vengence against a member of a minority race in the Rio Grande Valley, Plaintiff demands the following damages from this individual, pursuant to the 8th Amendment::
a. Compensatory damages equal to the bonds - one hundred twenty five thousand dollars, and;
b. Punitive damages of one hundred twenty five thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

6. Further as to this defendant, Cano viciously and maliciously refused for seventeen days to reduce the bond, while Plaintiff was incercerated in the Cameron County jail with murderers, rapists and dangerous Mexican drug dealers, conceivably relatives of the defendants named herein. Plaintiff demands the following damages pursuant to the 14th Amendment:
a. Compensatory damages of one hundred twenty five thousand dollars, and;
b. Punitive damages of one hundred twenty five thousand dollars, plus;
c. Atorney's fees equal to 40% of the awards demanded above.

7. Plaintiff retained the first of three Valley lawyers on 6 June, 1990, one James Yow Sitgreaves, from South Padre Island. Sitgreaves visited the Plaintiff while he was still illegally incercerated in the Harlingen jail, where he was told to acquire the police reports. Sitgreaves said he did not need them to get his client out of jail, which was the most stupid remark a lawyer could have made. Had he done as he was told, his client would have walked outside with him - depending on Sitgreaves' ability to read and understand what he reads in the English language. Only one report had been authored, signed and notarized, then filed with the Clerk of the District Court on 4 June, 1990. A copy was in the Harlingen City Jail files. The document was authored by the Task Force Commander, one Sergeant Crispin C. Trevino, who was employed by the city of Harlingen, on loan to the Task Force. His document is labeled as appendix 1, and reads in part: "THE (confiscated) MONEY WAS FOUND IN THEIR VEHICLE, AS THEY *ATTEMPTED* TO PAY WITH IT TO ANOTHER INDIVIDUAL". Any lawyer who is properly qualified and licensed by the State Bar of Texas, should have, and would have, demanded that his client be released immediately, after reading that report. Trevino states "55 pounds of marijuana were seized", but he failed to state that it was planted as illegal contraband, nor from whom it was seized. Furthermore, Sitgreaves was aware that his client's name was not Horace Lamar Watkins. Due to ineptness, incompetence and stupidity, Sitgreaves violated Plaintiff's federally protected rights to competent counsel, for which he daninds the following damages from this defendant:
a. Compensatoy damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.

7. On 21 June, 1990, Plaintiff retained another real loser/State Bar member, in

the form of John Lee Carrington, whose name is misleading, deceiving, and accounted for his presence as a visitor in the Cameron County jail, at the request of Plaintiff's darling little Mexican wife who thought she was calling an Anglo attorney. Carrington demanded and was paid one thousand dollars as an intial retainer - with the agreement that he'd be paid another fifteen hundred dollars, *IF* he could get the bond reduced that day, and could acquire a not guilty verdict during the trial.  However, John Lee was not responsible for the bond reduction, although he claimed he was, and decided the one thousand dollars was earned by making one or two phone calls to Cano,"who was not in for John Carrington", to quote Cano's secretary. In that he took money under false pertences and violated Plaintiff's federally protected rights to competent legal representation, Plaintiff demands the following damages from Carrington.

a.  As actual damages, one thousand dollars, plus interest of 10% retroactive to 20 June

1990, compounded annually to the date of this Court's decision, and;

b.  Compensatory damages of two hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the awards demanded above.


8.  An hour after Carrington left the Cameron County jail, Frank Maldonado of Pre-trial Bonding Company, Brownsville, came to see the Plaintiff.  No more than ten minutes later, Frank

reached for the phone and called Cano. As a firm and true gentleman who knew how to deal with incompetence and stupidity, Frank was short and to the point when he "encouraged" Cano to reduce the bond to twenty five thousand dollars, which cost Mrs. Watkins three hundred seventy five dollars. However, Sheriff Alex Perez ordered her to pay an additional fifty dollars per day for each day Plaintiff was incarcerated, and refused to give her a receipt for the money.  This is pointed out only as a means of showing the Court that deshonesty and corruption runs rampant in Cameron County, Texas. Regardless, Plaintiff was free, and able to return home after an ordeal that came very close to taking his life.


9. Further as to Defendant Carington: on or about 1 July, 1990, Plaintiff and his wife visited outgoing Cameron County District Attorney Benjamin Euresti, Jr., in his office. His Honor was in the process of divorcing himself from the

DA's office, in preparation to fill the vacancy in the 107th Judicial District Court, being vacated by Gilberto Hinojosa. Mr. Euresti was told in detail the circumstances involving Plaintiff's illegal warrantless arrest and incarceration, and the fact that his vehicle and the money he'd been paid for it, were illegally confiscated by the Cameron County Drug Enforcement Task Force. On that day, he ordered Oscar Ponce to return the vehicle and money, which was not done. However, Judge Euresti also instructed the Plaintiff to tell John Carrington to file a Motion for Dismissal, immediately, while he was still in a position to handle it as the DA. Those instructions were related to Carrington not more than an hour later, in his offiice in Harlingen, and Carrington said: "I WILL TAKE CARE OF IT IN THE MORNING". The dirty scoundrel lied through his teeth, and rather than act the part of an attorney, he acted the part of a lawyer and took his family on vacation with Plaintiff's thousand dollars. His actions violated Plaintiff's 5th Amendment Rights to Due Process, obstructed justice, and caused the Plaintiff ten years of attempting to regain his good name, honor, integrity and precviously impeccable reputation. Plaintiff demands the following damages of Defendant John Lee Carrington
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.

10. On or about fifteen July, 1990, when nothing had been forthcoming from Carrington nor Judge Euresti, Plaintiff and his wife again visited Carrington's office, and confronted him for his ineptness and incompetence - and his vicious and malicious intent to lie. His justification and rationale was: "MISTER WATKINS, I HAVE READ THE POLICE REPORTS, AND YOU ARE THE ONE WHO MISREPRESENTED YOURSELF AND YOUR INVOLVEMENT IN A DRUG DEAL THAT WENT WRONG. YOU WERE THE INSTIGATOR OF THAT DEAL. MOREOVER, BEN EURESTI AIN'T GONNA DO A DAMNED THING FOR YOU. HE AND THE REST OF THAT BUNCH IN THE DA'S OFFICE ARE NOTHING BUT A BUNCH OF CROOKED LAWYERS WHOSE ONLY INTEREST IN YOU IS TO KEEP THE MONEY AND YOUR PICKUP TRUCK, WHICH YOU'LL NEVER SEE AGAIN", or facsimile. For his failure to acquire the police reports he claimed to have read, and should have recognized as exculpatory documents with which he could have, and should have, utilized as a paid defense counsel, It would further have kept himself from being sued for his

violation of Plaintiff's federally protected rights to have competent representation in a criminal case pursuant to the 14th Amendment, Plaintiff demands the following damages from this malicious, inept, incompetent and lying lawyer:

a. Compensatory damages of one hundred thousand dollars, and;

b. Punitive damages of one hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the awards demanded above.

11. In that Defendant State Bar of Texas failed to properly qualify Defendants Sitgreaves and Carrington prior to licensing them, and for their intentional lack of scrutinization of these two members, afterward, the Bar is directly responsible that Plaintiff was denied his federally protected rights to competent counsel during the time and events mentioned above. In this regard, the Bar violated their own Rules in the Preamble, Rules 1 through 9, inclusive, and Plaintiff will quote number nine: "EACH LAWYER'S OWN CONSCIENCE IS THE TOUCHSTONE AGAINST WHICH TO TEST THE EXTENT TO WHICH HIS ACTIONS MAY RISE ABOVE THE DISCIPLANARY STANDARDS OF THESE RULES. THE DESIRE FOR THE RESPECT AND CONFIDENCE OF THE MEMBERS OF THE PROFESSION AND OF THE SOCIETY WHICH IT SERVES, PROVIDES THE LAWYER THE INCENTIVE TO ATTAIN THE HIGHEST POSSIBLE DEGREE OF ETHICAL CONDUCT. THE POSSIBLE LOSS OF THAT RESPECT AND CONFIDENCE IS THE ULTIMATE SANCTION. SO LONG AS ITS PRACTITIONERS ARE GUIDED BY THESE PRINCIPLES, THE LAW WILL CONTINUE TO BE A NOBLE PROFESSION. THIS IS THE GREATNESS ON ITS STRENGTH, WHICH PERMIT (OF) NO COMPROMISE". Further, Plaintiff filed a complaint against both Sitgreaves and Carrington, neither of whom were disciplined with so much as a slap on the hand. Plaintiff demands the following damages of this Defendant

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

12. Texas Attorney General Dan Morales, as chief law enforcement officer for the state during his tenure in office, was also lax to grossly negligent for his failure to scrutinize the State Bar of Texas. In that Morales had both the responsibility and the resources to even make a spot check of the Bar and their

illegal and incompetent failures to perform as intended when they were organized under the authority of the Texas Supreme Court, Plaintiff would have been spared from dealing with the likes of Sitgreaves and Carrington. In that such was not the case, Plaintiff's Constitutional Rights to competent and knowledgable attorneys has cost him ten years, plus, of living in shame and poverty. Plaintiff demands the following damages from Defendant State of Texas:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.


13. On 25 July, 1990, Cameron County Criminal Attorney Luis V. Saenz knowingly, intentionally and maliciously, violated the Plaintiff's Constitutional Rights to a fair and impartial trial, by utilizing an invalid and unauthorized, perjured document, before the July, 1990 Grand Jury. This document was prepared by Jose' Morales, dated 12 June, 1990, and is one of two police reports authored subsequent to 4 June, 1990, neither of which were swon to, nor officially filed with the Clerk of the District Court. Yet, being the crook that was on that day, Saenz took the Morales report, consisting of six pages, but signed at the bottom of page one, to illegally, dishonestly and maliciously obtain an indictment for making an illegal investment in order to retain the illegally confiscated money. Vulnerable and unaware that a mulit-page paper signed on page one, ends on page one, the Jury declined his pleas for an indictment of aggravated possession of a controlled substance, noting that on page five, Morales stated: "I THEN PUT ONE OF THE SUITCASES (filled with marijuana) IN THE BED OF THE TRUCK, AND THEY HELPED ME PUT THE OTHER ONE IN". However, Saenz was awarded an indictment for making an illegal investment on the grounds of a statement sentences later, in which Morales seriously perjured his invalid and illegal document when he states: "JOHN THEN PUT THE PAPER SACK WITH THE MONEY ON THE FLOORBOARD OF MY CAR ON THE REAR COMPARTMENT AREA". For Saenz' vicious and malicious use of this document, with the full intent to deceive the jury and obtain a fundamentally flawed indictment in order to retain the illegally confiscated funds from Plaintiff's vehicle, he denied him his Constitutional Rights to a fair and impartial, racially-free trial, obstructed justice, and disallowed this Plaintiff his 5th Amendment rights to Due Process of the

Laws.. Plaintiff demands the following damages from this evil and wicked
individual:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

14. Further, as to Defendant Saenz, who charged Plaintiff and the drug dealer
on the same indictment for the sole purpose that the illegally confiscated
money was found in the vehicle that was still in the name of the seller - the
mythical law of possession equals ownership - Plaintiff demands actual
damages in the amount of twenty five thousand six hundred dollars, per
Trevino's report, plus 10% interest compounded annually from 4 June, 1990
to the date of this court's decision.

15. Further as to Defendant Saenz, who was the respondeat superior to Oscar
Ponce during
4 June, 1990, to 9 August, 1990, during which time the illegally seized pickup
truck was malicioulsy retained  a period of 66 days during which time the
Plaintiff and his wife, both with heart diseases and patients of a cardiologist in
Harlingen. Both were very susceptible to heart attack any minute of the day or
night, but were without use of the vehicle and unable to purchase another.
Isolated on East Fernando Road bewteen Rio Hondo and Arroyo City, their
lives were endangered on a daily basis.  Pursuant to the Cruel and Unusual
Punishment Clause in the 8th and 14th Amendments, Plaintiff demands the
following damages from Defendant Luis V. Saenz:
a. Two hundred fifty thousand dollars, plus;
b.  Attorney's fees equal to 40% of the award demanded above.

16. The defendant directly responsible that Saenz was in a place of authority
to endamger the lives of two humans far superior to himself, is Defendant
State Bar of Texas, who failed to properly qualify him before granting him a
license to act as a criminal prosecutor - a dishonest and corrupt criminal
prosecutor. In that Saenz denied the Plaintiff a means of survival for himself
and his wife during the above mentioned time period, by virtue of his license
to so act, Plaintiff charges the State Bar of Texas with the 8th and 14th

Amendment's Cruel and Unusual Punishment for their failure to scrutinize Saenz after licensing him, in which case his lack of moral character and decadent principles would have surfaced early-on, prompting the Bar to eliminate him as a member who denied Plaintiff his Federally protected rights to life, liberty and the pursuit of happiness. Plaintiff demands the following restitution from Defendant State Bar:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

17.. On 16 August, 1990, Plaintiff appeared for arraignment before 197th Judicial District Court Judge Darrell B. Hester, WHERE CARRINGTON WALKED OUT ON THE PLAINTIFF *WITHOUT* PRIOR NOTICE Carrington had previously informed the Plaintiff and his wife that he'd read the police reports, but did not act responsible and acquire a copy for his client. In fact, he accused his client of "masterminding a drug deal". This assumption on his part could have been acquired only by reading the Morales report - beyond the first page - and due to his inability to read and understand what he reads in the English language, pertaining not only to the laws, but beyond anything a highschool freshman is required to know before being advanced - this ill-educated member of the State Bar of Texas "assumed" that he could lie his way out of the responsibility to earn the money he'd been paid to defend his client. His reason for deserting his client before the Judge entered the courtroom, is due to his ineptness, incompetence, un-reliability and inherent dishonesty. Plaintiff demands the following damages from this Defendant:

a. Compensatory damages of two hundred fifty thousand (($250,000.00) dollars, and;

b. Attorney's fees equal to 40% of the awad demanded above.

18. For their failure to sanction this member for his recklessness in this incident, the State Bar of Texas is in violation of their own rules and regulations, as specified in the Preamble: Lawyer's Responsibilities: Articles 1, 2, 3, 4, 5, 6, 7, 8 and 9. By violating their own rules, the Bar has caused direct damages to be perpetrated upon the Plaintiff by laywer Carrington, for which Plaintiff seeks the following damages:

a. Compensatory damages of two hundred fifty thousand ($250,000.00) dollars, and;

b. Attorney's fees equal to 40% of the award demanded above.

19. In all due respect, Judge Hester committed the greatest sin to mankind on 16 August, 1990, when he appointed another very dishonest and corrupt member of the State Bar to represent the Plaintiff after Carrington walked out. Brownsville lawyer Alfredo Padilla was hanging around the courthouse looking to be drafted by a judge in Hester's position, which was the case. However, Hester was scheduled to be away from the Court during the pleading and punishment phases of the trial, and one Fernando Mancias, of Edinburg, filled in during Hester's absence. Had Hester remained as the presiding judge, he possessed the good sence to read and understand what he read in the police reports, and Plaintiff would have been exhonerated the minute the Trevino report showed up. Mancias, however, held three exculpatory documents in his hands, as did Padilla, each of whom concealed them from the gringo minority member of the Anglo race in the Rio Grande Valley, and these two dishonest and corrupt members of the State Bar decided to aid Saenz in his illegal quest to retain the confiscated money, and a conspiracy to convict at any cost, denied another and far superior individual his 5th Amendment Rights to Due Process - an inherrited trait in both Saenz, Padilla and Mancias' personalities. For knowingly and maliciously allowing the case to move forward to the pleading stage, Plaintiff Prays that this Court will get Padilla's attention by awarding the following damages:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

20. Further as to Defendant Padilla, for allowing the case to move forward into the Punishment stage while he had the three exculpatory documents in his possession, knowingly and maliciously intending to deny his "client" his 5th Amendment Rights to Due Process of the laws, Plaintiff demands the following damages from this debased and inherrently crooked defendant:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees eqaul to 40% of the awards demanded above.

21. Due to the ineptness and incompetence of the impotent and worthless State Bar of Texas who failed to properly qualify Padilla prior to granting him a license to "practice" on this naive Plaintiff who'd not previously been screwed over by a lawyer in any state, and for their malicious negligence in their failure to scrutinize Padilla prior to his and the Plaintiff's ill-fated encounter, the 5th and 14th Amendment Rights to Due Process have been violated by Padilla, due the the Bar's ineptness, incompetence and eagerness to hand out a license to the likes of Padilla. Plaintiff demands the following restitution from Defendant State Bar of Texas:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.

22. On 5 October, 1990, believing Adolph Hitler was dead, Plaintiff was escorted into the 197th Judicial District Court to see the spittin' image of Hitler, only with an uglier, scragglier mustache, sitting in the chair of Judge Hester. The personality of Hitler was also present, but absent his favorite victims, the Jewish race. Rather, Plainiff being an Anglo, Mancias saw an opportunity to act the part of the man who ordered the murder of tens of millions of Jews, and set his sights on taking this man's good name, honor, integrity and impeccable reputation from him, to satisfy his own inferiority complex. With three exculpatory documents in his hands, in the clerk's files,

16

Mancias maliciously threatened the man before him with ninety nine (99) years in prison and a fifty thousand ($50, 000) dollar fine, if he plead not guilty to the charges, and was found guilty by himself during the trial. Remembering his experience in the Harlingen jail and in Cameron County, aware the Mexican murderers, rapists and drug dealers would also be in state prison, Plaintiff had no alternative than to plead Horace Lamar Watkins guilty, as charged. For maricioulsy coercing the Plaintiff with threats that caused chest pains and endangered his life in order for Mancias to deny his 5th Amendment Rights to Due Process, acting clearly outside his jurisdiction, Plaintiff demands the following restitution of this vile and mean-spirited individual:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

23. Also as to Defendant Mancias, who did maliciously conceal the exculpatory documents after taking the oath of office to uphold, protect and defend the Constitution of the United States, then viciously violated his 5th Amendment Rights to Due Process, Plaintff demands the following restitution of this depraved Hitler look-alike, act-alike, who acted clearly outside his jurisdiction to deny an innocent man his 14th Amendment Rights to good name, honor, integrity and impeccable reputation:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fes equal to 40% of the awards demanded above.

24. Defendant State Bar of Texas acted clearly outside their jurisdiction when they failed to properly qualify Mancias before granting him a license to practice in this state in 1990, and further acted in the absence of good, common horse sense, when they failed to properly scrutinize Mancias, afterward. Close scrutinization, or minute scrutinization, would have uncovered the true personality of this unscrupulous individual. In that the Bar licensed Defendant Mancias to practice law in Texas in 1990, they are liable for his illegal actions against the Plaintiff, for which he demands the following restitution:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.

25. The inept and incompetent, impotent State Commission on Judicial Conduct, should also have eliminated the scurilous individual named Fernando Mancias from the judicial program, and could easily have found grounds on their own initiative, had the Commissioner Robert Flowers utilized initiative and performed his sworn duty to prevent this type of dishonest and coprrupt invidual from destroying the lives of this Texas citizen. Dishonesty and corruption in this man's inner self was there long before he became a judge, but the Commissioner, in his own little world of booze and/or illegal drugs, conceivably both, ignored his duties to scrutinize Mancias, et al. After Plaintiff scrutinized him in a courtroom where he disgraced another judge's bench, Plaintiff filed a complaint against Mancias, and rather than investigate the charges, Flowers drunkenly disturbed the Plaintiff and his wife and family in a telephone call to their home during a birthday party, castigating the Plaintif for revealing the flawed character and corrupt mind of Mancias. Needless to say, such an interruption was upsetting, causing the entire family anguish and distress, and several difficult nights of very little sleep. For this malicious act to disturb the family and cause

17

suffering to other innocent adults and children, Plaintiff Prays this Court will grant the Plaintiff's demands for restitution, as follows:

a. Compensatory damages of two hundred fifty thousand dollars. Plus;

b. Attorney's fees equal to 40% of the award demanded above.

26. As to Defendant State Commission on Judicial Conduct, who hired and pays Flowers' salary, the Commission is guilty of allowing the Commissioner to drunkenly disturb a family gathering, and should have closely checked his background and personal life, prior to allowing him to invade the privacy of Plaintiff's home. Plaintiff demands the following restitution from the Commission:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

27. Texas Attorney General Dan Morales, as the Chief Law Enforcement Officer in the State during the above described illegal and evil event, was lax to grossly negligent in his duties to scrutinize the the Commission and the Commissioner, whose substance abuse problem would have surfaced early-on, prior to his ability to do harm to the Plaintiff and his family, especially the teenage and pre-teen grand children, who now fear anyone who works for the State of Texas. They are very aware, as Mexicans themselves, that Morales was a treat to their continued happiness throughout their lives. For his negligence in this matter, Plaintiff acts on behalf of his children and grand children to castigate the former Attorney General, who was hired by and paid by the citizens of the state. Plaintiff demands the following restitution from Defendant State of Texas:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

28. Further as to Defendant Padilla, and this Court should now be aware of his ineptness and incompetence, perhaps not. Some few minutes before entering the 197th Judicial District Court to face Defendant Mancias during the sentencing phase on the trial on 3 December, 1990, Padilla was told that his client was going to withdraw the guilty plea of Horace Lamar Watkins. This brilliant member of the State Bar said, and this is a direct quote: "IF YOU WALK IN THERE AND PLEAD NOT GUILTY, I GUARANTEE THAT JUDGE MANCIAS WILL FIND YOU GUILTY AND SENTENCE YOU TO NOT LESS THAN THREE TO FIVE YEARS IN PRISON, AND WILL FINE YOU UP TO TEN THOUSAND DOLLARS. LOOK AT YOUR SITATUATION, MISTER WATKINS - YOU WERE AT THE SCENE OF A CRIME - YOU WERE IN YOUR OWN VEHICLE WITH A KNOWN DRUG DEALER, AND THE MONEY TO PAY FOR THE MARIJUANA WAS FOUND IN YOUR VEHICLE. YOU ARE ALSO AN ANGLO IN A PREDOMINATELY MEXICAN COMMUNITY. YOU HAVE A MEXICAN LAWYER, AND YOU'LL BE FACING A MEXICAN JUDGE AND A MEXICAN PROSECUTOR. WHAT SORT OF A DEFENSE COULD I POSSIBLY PRESENT ON YOUR BEHALF...EVEN WITH A JURY. I'VE JUST IMPANNELED A JURY DOWN THIS HALL - IT IS AN ALL-MEXICAN JURY, WHICH IS THE NORM IN THE VALLEY - NOT THE EXCEPTION". He then walked away and allowed the Plaintiff to record that little pep talk. However, Padilla's brightest moment was yet to come - when he escorted his "client" into the room to face his "good ole beer drinkin' buddy from law school days". He guided the Plaintiff to the bench and announced in a loud and clear voice: "THERE SITS THE JUDGE, MISTER

WATKINS - TELL HIM YOUR STORY". For his malicious intent to withhold even one of the exculpatory documents, either of which would have been better than nothing, this evil-spirited and brain-dead lawyer violated every known rule of jurisprudence, and grossly violated Plaintiff's Constitutional Rights to competent counsel in a criminal cause of action. Plaintiff demands the following restitution from Defendant Padilla:
 a. Compensatory damages of one hundred thousand dollars, and;
 b. Punitive damages of one hundred fifty thousand dollars, plus;
 c. Attorney's fees equal to 40% of the awards demanded above.

29. Back inside the courtroom, Mancias had no court reporter to record what was said and who said it. For his malicious intent to deny the Plaintiff a record of the proceedings, therefore denying his 5th Amendment Rights to Due Process, Mancias clearly acted outside his judicial authority, for which Plaintif demands the following restitution:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

30. Further, Mancias asked if Padilla had read the pre-sentencing investigation report, which he had not. Mancias stated that he'd not had the time to read it, either, and sent Padilla and his client into the hall while he sentenced the drug dealer. He then called Padilla and his client back into the room and sentenced Horace Lamar Watkins to ten years, probated, and a five thouand dollar fine, four thousand probated. However, he also ordered Horace Lamar Watkins to pay Padilla's legal fees. He then signed a sworn and notarized statement that he'd read and studied the PSI report on Horace Lamar Watkins, "then proceeded into the sentencing phase of the trial". One more slightly illegal and inept act by this defendant, was the fact that he'd not affixed his signature on the line provided for the presiding judge, on Horace Lamar's guilty plea. Nonetheless, he proceeded without a guilty plea. Fact is, this brain-dead member of the State Bar cannot honestly state nor prove that he presided over the sentencing phase of the trial. In that the citizens of Hidalgo County, Texas, voted for this man as their dishonest and corrupt State District Judge, Plaintiff invokes Owen v City of Independence (1980), et al., in which the Supreme Court determined that municipal entities are not protected by good faith immunity. The Court also held that a municipality's employees who acted in good faith would not shield a municipality from either prospective relief or compensatory damages. In Leatherman v Tarrant County, the Supreme Court recognized that a municipality may not assert qualified immunity as a defense. 113 S. Ct. 1160, 1162, (1993). Therefore, Plaintiff demands the following damages from Defendant Hidalgo County, Texas"
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.
    For the benefit of Hidalgo County residents/voters in regard to Mancias, Supreme Court Justice Oliver Wendell Holmes, Jr., while addressing the graduating seniors at Harvard School of Law during commencements, brought his address to termination with these words of intellectual wisdom: "NOTHING IS GREATOR NOR MORE POWERFUL IN AMERICAN POLITICS, THAN THE VOTER'S RIGHTS TO ACCEPT OR REJECT THE OPINIONS AND ACTIONS OF THOSE WHO WOULD ABUSE THEIR PUBLIC OFFICE, AND WITH THEM RESTS THE ABILITY TO *IMPEACH AND CAST HIM BACK FROM WHENCE HE CAME".*

## ANOTHER NOTE TO THE JUDGE OF THIS COURT:

Shortly after Horace Lamar Watkins was sentenced, Plaintiff began a search in the Cameron County Law Library and in the Clerk's files, attempting to locate anything that could prove Constitutional Rights were violated by police, lawyers, prosecutors and judges, from day one. Neither of the three police reports were in the clerk's files, nor was the County Library of any help. The federal law library then became the point of discovery for the Laws that would force the issue, if only the police reports were available. Almost five years later, on 5 September, 1995, Mrs. Watkins' birthday, a collect call was received from Brownsville during a dinner party, and the female voice apologized that she was calling from a pay phone, had no change, but had information that would aid in getting to the bottom of everything "the dirty scoundrels did, who railroaded you". A federal investigation was underway in Luis Saenz office, she said, "and some very important papers that have been missing in your files, have now been secretly re-inserted, as a result of this investigation", or facsimile.  She then stated that the documents would be available the following morning, and they were. Sergeant Trevino's report was a welcome sight, as was Parker's and Morales' report. In the interim, this Plaintiff played by the rules on behalf of Reverend Doctor Horace Lamar Watkins, by reporting to young and cocky probation clerks who seemingly despised all Anglo members of the human race , having to explain why it was impossible to pay the fine imposed on the Reverend, and also pay Mrs. Watkins' medical bills and for prescription drugs, plus food, utility bills, etc.

31. On 11 November, 1995, Civil Action B-95-183 was filed in the U.S. District Court, in Brownsville...which was a bad mistake.  Jurisdiction of the case was entrusted into the hands of dishonest and corrupt, Defendant Magistrate Judge FIDENCIO G. GARZA, JR., who sat on the case fourteen months without benefit of a mandated speedy, inexpensive trial, per Federal Rules of Civil Procedure (FRCP), Rule 1, nor a mandated pre-trial conference for scheduling and management, pursuant to Rule 16, nor an additional mandated provision for depositions and discovery, pursuant to Rule 26[f].  For his intentional act of depriving this Plaintiff of 5th Amendment Rights to Due Process, by doing nothing, the following demands for retribution from this crooked person, who was acting totally outside his jurisdiction during the entire time, are as follows:
a.  Compensatory damages of two hundred fifty thousand ($250,000.00) dollars, and;
b.  Attorney's fees equal to 40% of the award demanded above.

32. In that Defendant U.S. Department of Justice and Attorney General Janet Reno were made aware of this dishonest and corrupt act by Garza, and did nothing to remove the scoundrel from the bench, both Reno and Justice acted negligently in their duty as the Chief Law Enforcement Officer in the United States, and as the Department of Justice, respectively. In that Garza was allowed to remain on the bench, he later continued to violate Plaintiff's Rights to Due Process, maliciously and in a contemptable manner. The Justice Department and Reno, who are charged with bringing crooked judges, et al, to trial, and if convicted, sentenced to prison, have been grossly negligent in their refusal to order an FBI investigation into dishonesty and corruption in the U.S. District Court, Brownsville Division, where Plaintiff's 5th Amendment Rights to Due Process are being violated as this Civil Action is being authored. Plaintiff Prays that this Honorable Texas District Court Judge will exorcize the power of the bench to get the Attorney

General's attention for her role in denying the Plaintiff his 5th Amendment Rights to Due Process of the Laws, by awarding the following damages, pursuant to Forsyth v. Mitchel::
a. Compensatory damages of two hundred fifty thousand ($250,000.00) dollars, and;
b. Attorney's fees equal to 40% of the above demanded award.

33. On or about 11 January, 1997, Garza, under duress, granted Plaintiff's Motion for Leave to Amend, with these instructions as a smokescreen, "MISTER WATKINS, I AM AWARE FROM SEEING YOUR PICTURE IN THE NEWSPAPER, THAT YOU WERE A CAREER MILITARY PILOT AND A VETERAN OF WORLD WAR TWO, SO YOU WILL KNOW WHAT I MEAN WHEN I TELL YOU TO FINE TUNE YOUR INSTRUMENT. YOU HAVE A GOOD CASE HERE, AND A MAN ABOUT YOUR AGE FILED A SUIT PLAINTIFF, PRO SE, THAT THIS COURT HEARD ONLY A COUPLE OF WEEKS AGO, AND HE PREVAILED" or facsimile. Plaintiff filed amended Civil Action B-95-183 on 14 February, 1997, following Garza's instructions to the letter. However, several Brothers in the Lower Rio Grande Valley Mexican Compadre Protective Association, who'd been mentioned in the Original Petition, were fine-tuned into the Amended Petition, and Garza has since, along with others mentioned below, violated Plaintiff's 5th Amendment Rights to Due Process and obstructed justice to protect his and Vela's Mexican compadres. In so doing, Garza acted with total disregard for his obligations to the bench of justice, placing himself and his acts of malicious intent to deny even a pretrial conference, totally outside his jurisdiction. He is, therefore, a prime candidate as a defendant in this Civil Action in State Court. Plaintiff demands the following damages from Garza:
a. Compensatory damages of two hundred fifty thousand ($250,000.00) dollars, and;
b. Attorney's fees equal to 40% of the award demanded above.

34. The above acts on the part of Defendant Fidencio G. Garza, was also brought to the attention of the U.S. Attorney General and the Department of Justice, who ignored the information and failed again to instigate an FBI investigation into dishonesty and corruption in the Brownsville Division, as requested by the Plaintiff. Their malicious and callous acts of doing nothing allowed Garza to further harm the Plaintiff, by denying his 5th Amendment Rights to Due Process. Plaintiff demands the following restitution from the U.S. Attorney General, Janet Reno.
a. Compensatory damages of two hundred fifty thousand ($250,000.00) dollars, and;
b. Attorney's fees equal to 40% of the award demanded above.

35. On 17 March, 1998, Plaintiff left the dishonest and corrupt Brownsville Division, and filed Civil Action V-98-0024 in the Victoria Division, charging Vela, Garza, et al, with falsifying court documents and obstruction of justice, which also never saw the inside of a courtroom. At some point in time, 1998, newly-appointed and newly-arrived U.S. District Judge HILDA G. TAGLE arrived on the Brownsville scene, and B-95-183 was assigned into her jurisdiction. Senior judge Filemon B. Vela, also ordered Tagle to consolidate V-98-0024 with B-95-183, bring them into the jurisdiction of the Brownsville Division, then dismiss both with a single stroke of her pen. The fallacy of such an order, centers on the fact that V-98-0024 was outside Vela's jurisdiction, and neither the Plaintiff nor a single defendant had filed a motion to consolidate. And third, such a consolidation violated both the Federal Rules of Civil Procedure, Rule 42[a], and Plaintiff's 5th Amendment Rights to Due Process of the Laws. For his illegal and malicious acts in this matter,

while acting clearly outside his judicial authority, Plaintiff demands the following restitution from Defendant Vela:

a. Injunctive relief in the form of signed and sealed Writs of Execution for all Defendants in default in Civil Action B-95-183, and signed and sealed Writs of Execution for all Defendants in default in Civil Action V-98-0024, and;

c. Compensatory damages of two hundred fifty thousand dollars, plus;

d. Attorney's fees equal to 40% of the money award demanded above.

35a Further as to Defendant Vela, who did on 19 November, 1999, act to deny Plaintiff's 5th Amendment Rights to Due Process, by maliciously reaching way outside his judicial duties to dismiss Civil Action V-99-14 to protect his compadre San BenitoMayor Richardo Merado from being denied an appointment to fill Vela's hopefully vacated bench in the very near future. The mayor and the city councilmen hired and pay their police chief, who has instructed his officers on the force that they need no warrants to break and enter a private residence, search and seize, nor warrants to arrest. In that Merado falls far short of qualifying for a federal judgeship, Vela could readily identify with his shortcomings, and felt comfortable that Merado fit right in with the power base in the Brownsville Division, status quo. To aid a compadre, Vela also feels comfortable in denying Plaintiff his Constitutional Rights to Due Process, and Plaintiff demands the following restitution from this depraved individual who abuses his office to aid friends.

a. Injunctive relief in the form of signed and sealed Writs of Execution for all defendants in default in Civil Action V-99-14, later illegally and corruptly re-designated as B-99-118, and;

b. Compensatory damages of two hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the award demanded above.

36. Defendant Janet Reno has been kept abreast of Vela's abuse of office, yet has done nothing in the way of ordering an investigation into a matter of grave importance, if indeed the Depatment of Justice is more than simply a vehicle to kill innocent people at Ruby Ridge, burn innocent women and children to death in Waco, and charge into a private residence to kidnap an illegal alien from Cuba. By her refusal to act in this matter, however, Plaintiff Prays that this Honorable Court will utilize the vehicle of justice in Title 42 USC, Section 1986, and divert Reno's inatentiveness in the direction of the dishonest and currupt "senior judge" in the Brownsville Division, and the entire Southern District of Texas, by causing her to make restitution for her role as a co-conspirator in the obstruction of justice scheme to deny the Plaintiff his 5th and 14th Amendment Rights to Due Process of the Laws, as follows:

a. In that Reno took the oath of office to uphold, protect and defend the Constitution, which she has refused to do, she has continuously acted outside her official duties as a federal employee; she has made it clear to the entire world that she is inept, incompetent, ineffective, unsuited for the high office the president appointed her to, and equally as corrupt as the individuals she is protecting in the Southern District of Texas. Therefore, as a prime mover in this scheme to obstruct justice, she has placed herself into a position where she can be held accountable in this Honorable Texas District Court as a defendant. Plaintiff Prays that this Court will order the Defendant, as a private citizen, to act responsible in this matter by instigating an FBI investigation of the Southern District of Texas, starting with the Courts, then in the U.S. Attorney's office in Houston, Brownsville, then Laredo. And, they may begin their investigation with the Plaintiff and his vast array of perjured court documents. They show abuse of office; obstruction of justice, and

22

just plain old dishonesty and corruption that is wide spread in the District, from the so-called
Chief Judge to the lying lawyers who serve as assistants to the U.S. Attorney, and;
b. Compensatory damages of two hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the award demanded above.

37. On 17 March, 1998, Plaintiff left the dishonest and corrupt Brownsville Division and filed
Civil Action V-98-0024 in the Victoria Division, naming Garza, Vela, et al, with perjuring court
documents and obstruction of justice. Reno and the Justice Department were also defendants.
Presiding, was Houston U.S. District Judge John D. Rainey, and Assistant U.S. Attorney Keith
Edward Wyatt, also from Houston, was the assigned defense counsel for the government. Wyatt
had sixty days in which to respond - three times greater than non-fed employees, and spent
virtually the entire time in an attempt to locate documents with which to defend, without any luck,
at all. Thus, nearing the expiration date, he filed for an extention of time, which Defendant Rainey
*granted several days after the sixty day period expired.* Plaintiff filed for default judgement
against the defendants, also without any luck at all. However, before Wyatt could file his Original
Response, along came Defendant Hilda G. Tagle into the Brownsville Division, ready, willing and
able to fit right into the pattern of perjured court documents, abuse of office, and acting the part
of defense counsel for the defendants Vela, Garza, et al. Vela assigned jurisdiction of CA
B-95-183 into Ms. Tagle's court, with orders to consolidate the action with V-98-0024, in which
he is a defendant, bring both lawsuits together into the Brownsville Division, then dismiss both
cases with a single stroke of her pen. Thus, on 10 July, 1998, Defendant Tagle filed an ORDER
with the Clerk, Michael Milby, to consolidate. However, this defendant lied through her teeth
twice in the first sentence, when she states: "THE COURT, HAVING EXAMINED THE
*CONTENTIONS* OF THE PARTIES IN BOTH THE ABOVE ENTITLED AND NUMBERED
CAUSES OF ACTION, FINDS THAT THESE CASES INVOLVE *COMMON QUESTIONS
OF LAW AND FACT:*. Her first lie concerns the fact that Wyatt had filed no such contentions on
10 July, and the second lie rests with the true fact that B-95-183 is a Title 42, USC, Section 1983
Civil Rights Action, and V-98-0024 charges perjury and obstruction of justice. That leaves one
common denominator - the same Plaintiff, Pro Se. Defendant Tagle acted recklessly, maliciously
and stupidly, outside her jurisdiction to uphold, protect and defend the Constitution, and not only
obstructed justice, she denied the Plaintiff his 5th and 14th Amendment Rights to Due Process of
the Laws. Furthermore, Tagle obviously flunked penmanship in kindergarten, and squiggled an
indestinguishable mark over the signature line, which in all respects leaves the civil action in a
muted, but prosecutorial stance. Nonetheless, Plaintiff demands the following restitution from this
vile and evil woman:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

38. Plaintiff naturally filed an objection to the illegal and immoral consolidation order, directing it
to the attention of Vela. Rather than act honest, Vela ordered Defendant John W. Black to file a
paper known in Brownsville as a magistrate judge's report and recommendation, which was done
on 26 August, 1998. A short review, just made, shows that Black perjured the paper in roughly
twenty places. Plaintiff will be pleased to present the document to the Court with this crooked

Man on the witness stand. The Court will be shown, in detail, every perjured statement this dishonest defendant made in his conspiracy with Defendants Vela and Tagle, et al, to deny the Plaintiff's 5th and 14th Amendment Rights to Due Process of the Laws, maliciously and with the knowlege that he was clearly acting outside his jurisdiction to abuse the office he dishonestly occupies, hopefully temporarily. Plaintiff demands the following restitution from this deeply corrupted and depraved individual:

a. Compensatory damages of one hundred thousand dollars, and;

b. Punitive damages of one hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the awards demanded above.

39. On 11 August, 1999, Plaintiff made a pleading to the newly-elected State District Judge in the 197th Judicial District, Migladia Lopez, Praying she would set aside the illegally acquired and criminally inflicted conviction of The Reverend Doctor Horace Lamar Watkins. Accompanying the pleaded, she was supplied with the laws that mandate such an act, along with Plaintiff's birth certificate that shows his real name, and the death certificate of Horace Lamar Watkins. To prove no crime had been committed, she was also afforded a copy of the Trevino report and an explanation with proof that Luis V. Saenz acted the part of an idiot and a crook that he was on 25 July, 1990, when he conned the Grand Jury into granting him an illegally acquired indictment against Reverend Watkins for making an illegal investment. Nonetheless, Defendant Lopez maliciously ignored the pleading, denying the Plaintiff his 5th Amendment Rights to Due Process, and the 14th Amendment Rights to regain his and his deceased father's good name, honor, integrity and impeccable reputations. She further acted clearly outside her oath of office to uphold, protect and defend the Constitution of the United States, and obstructed justice - an act that will show up if an FBI investigation into her activites is instigated as a result of this Civil Action. If convicted in federal court, it carries a sentence of three years and a heavy fine. Plaintiff demands the following restitution of this defendant:

a. Injuntive relief per the Supreme Court's ruling in Pulliam v Allen, Article c, Page 2, as follows: Judge Lopez will set aside the conviction of Reverend Horace Lamar Watkins, and in so doing, she will state that he was illegally convicted by a team of unscrupulous and criminally demented cops, lawyers and judges in Cameron County, Texas. Further, the Order will be on 197th Judicial District Stationary, and bear Judge Lopez' signature IN HER OWN NAME, legibly and legally executed. Further, for ignoring the Plaintiff and maliciously prolonging the agony of loss of good name, honor, integrity and impeccable reputation, Plaintiff demands the following financial restitution:

a. Compensatory damages of one hundred thousand dollars, and;

b. Punitive damages of one hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the awards demanded above.

40. Plaintiff appealed Defendant Tagle's illegal and perjured order to consolidate, then dismiss, B-95-183 and V-98-0024, to the 5th Circuit Court of Appeals in New Orleans. Defendant Harold DeMoss was one in a three group panel of dishonest and corrupt individuals who acted in concert in a conspiracy to act clearly outside their oath of office to uphold, protect and defend the Constitution, by perpetrating a fraud upon the Plaintiff to deny his petition for a Writ of Mandamus, pursuant to Federal Rules of Appellate Procedure, Rule 21. Specifically, Plaintiff asked the Court to command Filemon Vela, as the Senior District Judge, to afford Plaintff his

day in court. Rather than act on the Petition as an honest group of appellate judges, the three did not meet as a group, but did their malicious deeds via fax machines when acting clearly outside their jurisdiction to protect crooked judge Vela by denying the Writ of Mandamus *on page three* of a three page document, *bearing only initials on page two*, rendering the document null and void. Plaintiff filed a Motion for Rehearing. then another, and on 26 January, 1999, Defendant Dennis L. James issued a denial of the rehearing motion, PER CURIAM, then scribbled on the signature line, ashamed to affix a signature to admit his actions in denying the petitioner his 5th Amendment Rights to Due Process. In voting per curiam, DeMoss acted as a co-conspirator to obstruct justice, by denying Plaintiff's 5th Amendment Rights to Due Process or the Laws. Plaintiff demands the following restitution from this dishonest and corrupt individual.
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

41. As a malicious co-conspirator with Defendant DeMoss, Defendant W. Eugene Davis also perpetrated a fraud upon the Plaintiff and obsructed justice, when he affixed his initials on an invalid and illegal paper that in not even minutely related to a legal court document. By Davis' malicious intent to deny the Plaintiff's petition for a Writ to command justice from Defendant Vela, Defendant Davis dishonored himself, the 5th Circuit Court of Appeals, and denied Plaintiff's 5th Amendment Rights to Due Process. Further, the conspiracy violated the 5th and 14th Amendment Rights to Due Porcess, via a Writ of Ceriorari from the Supreme Court, on the grounds that 5th Circuit had made no decision, one way or the other, on which to rule. Plaintiff demands the following restitution from Defendant W. Eugene Davis.
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

42. The third vicious and malicious co-conspirator with Defendants DeMoss and Davis, is defendant James L. Dennis. Plaintiff alleges that James and the clerk of 5th Circuit are the instigators in the conspiracy to deny the Writ of Mandamus, in order to protect their crooked brother, Filemon Vela. Defendant Dennis acted outside his jurisdiction to deny the Plaintiff his 5th Amendment Rights to Due Process of the laws, yet obviously was unaware that Plaintiff would file suit against such a crooked individual as he. Dennis also violated Plaintiff's 14th Amendment Rights to regain his good name, honor and integrity, and impeccable reputation. Plaintiff demands the following restitution from this evil individual:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43. Determined to find an honest U.S. District Judge, Plaintiff mistakenly filed Civil Action L-99-99 in the equally dishonest and corrupt Laredo Division on or about 15 November, 1999, naming Vela, Garza Tagle, et al, as defendants. They were charged with falsifying court documents and obstruction of justice. Although the clerk has never supplied the Plaintiff with

a stamp -filed copy of the Original Petition, a "Memorandum" was enclosed from defendant Marcel C. Notzon, announcing a mandate-scheduled Conference and Disclosure of Interested Parties, for 19 January, 2000...and this date in most significant. Also, the Clerk of the District Court sent out a "NOTICE OF THE RIGHT TO TRY A CIVIL CASE BEFORE A MAGISTRATE JUDGE". See appendix #5, which reads as follows. WITH THE CONSENT OF ALL PARTIES, A UNITED STATES MAGISTRATE JUDGE MAY PRESIDE IN A CIVIL CASE, INCLUDING JURY TRIAL AND FINAL JUDGEMENT. THE CHOICE OF TRIAL BY A MAGISTRATE JUDGE IS ENTIRELY YOURS. TELL ONLY THE CLERK. NEITHER THE JUDGE OR MAGISTRATE JUDGE WILL BE TOLD UNTIL ALL PARTIES AGREE. THE DISTRICT JUDGE TO WHOM YOUR CASE IS ASSIGNED MUST APPROVE THE REFERRAL TO A MAGISTRATE JUDGE. YOU MAY GET CONSENT FORMS FROM THE CLERK. In that not all parties agreed, specifically the Plaintiff, any and all action on the part of this Defendant were taken in clear absence of all jurisdiction.

43[a]. In her memorandum of 27 October, 1999, Magistrate Notzon threatens sanctions for failure to follow the requirements of Federal Rules of Civil Procedure, Rule 26, by stating; 'FAILURE BY COUNSEL TO FOLLOW ANY OF THE PROVISIONS OF RULE 26 *WILL RESULT IN SANCTIONS* BEING ASSESSED AGAINST COUNSEL PERSONALLY. This is brought to the attention of the Court for two reasons: to establish that Defendant Notzon was ILLEGALLY ACTING AS THE PRESIDING JUDGE, AND/OR UNDER FALSE PRETENSES, and the fact that she is inclined to perjure a document, when truthfulness would better serve her purpose. Not a single lawyer was sanctioned for their inept and incompetence, when none responded. Defendant federal employees have sixty days in which to respond in a Civil Action in federal court. However, when it appeared that sixty days was fast approaching and only a few, meaning less than half of the federal defendants had responded, and most of the non-feds were already in default, Notzon was either ordered to defend the defendants who'd not responded, or acted upon her own initiative. On 20 January, 2000, Plaintiff received two large envelopes in the mail, each postmarked 19 January, 2000. One was from Assistant U.S. Attorney Hector C. Rameriz, from the Laredo office, the other from Defendant Notzon. In Notzon's envelope was an ORDER, (marked appendz #6), that is either back-dated to 13 January, 2000, or she forget to mail it before the 19th of January, 2000, which is the controlling date in the Federal Rules of Civil Procedure, Rule 5[a]. It reads: SERVICE BY MAIL IN COMPLETE UPON MAILING. It is also perjured when she claims : MOST OF THE DEFENDANTS ARE NOT REQUIRED TO FILE AN ANSWER UNTIL 20 JANUARY, 2000. She then acts the part of Tagle, Vela, Black, and/or all three, when she dishonestly and corruptly orders the 19, January 2000, meeting VACATED, and utilizes the rationale: THE COURT CONCLUDES THAT THE FRAMEWORK OF RULE 26, IF APPLIED TO THIS CASE, WOULD NOT SERVE THE ENDS OF JUSTICE, as if vacating the meeting would be totally just for the Plaintiff. For maliciously lying to justify denying the Plaintiff's 5th Amendment Rights to Due Process, Plaintiff demands the following restitution of defendant Notzon:

a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;

c. Attorney's fees equal to 40% of the awards demanded above.

43[b] By maliciously acting outside her jurisdiction to obstruct justice and defend Defendant Migdalia Lopez, who was already in default for failure to appear and defend as prescribed in FRCP, Rule 4[a] and the summons, it'self, Notzon denied the Plaintiff his 14th Amendment Rights to regain his good name, honor, integrity and reputation.Plaintiff demands the following restitution of this defendant:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[c] By maliciously acting outside her jurisdiction to obstruct justice and defend Defendant Vela, who was already in default for failure to appear and defend, Defendant Notzon denied Plaintiff's 5th Amendment Rights to Due Process, for which he demands restitution, as follows:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dolars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[d] By maliciously acting outside her jurisdiction to obstruct justice and defend Defendant Garza, who was already in default for failure to appear and defend, Defendant Notzon denied Plaintiff's 5th Amendment Rights to Due Process, for which he demands restitution, as follows:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[e] By maliciously acting outside her jurisdiction to obstruct justice and defend Defendant John Black, who was already in default for failure to appear and defend, Defendant Notzon denied Plaintiff's 5th Amendment Rights to Due Process, for which he demands the following restitution;
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[f] By maliciously acting outside her jurisdiction to obstruct justice and defend Defendant Barbosa, who was already in default for failure to appear and defend, defendant Notzon denied Plaintiff's 5th Amendment Rights to Due Process, for which he demands the following restitution:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[g] By maliciously acting outside her jurisdiction to obstruct justice and defend Department of Justice, who was already in default for failure to respond and defend, Defendant

Notzon denied Plaintiff's 5th Amendment Rights to due process, for which he demands the following restitution:

a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;.
C. Attorney's fees equal to 40% of the awards demanded above.

43[h] By maliciously acting outside her jurisdiction to obstruct justice and defend Hilda Tagle, who was already in default for failure to respond and defend, Defendant Notzon denied the Plainfiff's 5th Amendment Rights to Due Course of the Laws, for which he demands the following restitution:

a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[i] By maliciously acting outside her jurisdiction to obstruct justice and defend U.S. Attorney General Janet Reno, who was already in default for failure to appear and defend, defendant Notzon denied Plaintiff's 5th Amendment Rights to Due Process of the Laws, for which he demands the following restitution:

a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

43[j] By maliciously acting outside her jurisdiction to obstruct justice and defend defendant Mosbacker, who was already in default for failure to appear and defend, defendant Notzon denied Plaintiff of his 5th Amendment Rights to Due Proccess, the Laws, for which he demands the following restitution:

a. Compensatroy damages of one hundred thouasnd dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.

44. Plaintiff naturally filed a Motion on 27 January, 2000, to Remove Notzon from the Civil Action, where she was serving illegally as presiding judge, anyway. U.S. District Judge, Defendant Keith P. Ellison, maliciously ignored the Motion. In so doing, he acted as a co-conspirator to defend the defendants, an act clearly outside his judicial authority to deny the Plaintiff his 5th Amendment Rights to Due Process of the Laws. Plaintiff demands the following damages:

a. Injunctive relief in the form of signed and sealed Writs of Execution for all defendants in default in Civil Action L-99-99, and;
b. Compensatory damages of one hundred thousand dollars, and;
c. Punitive damages of one hundred fifty thousand dollars, plus;
d. Attorney's fees equal to 40% of the awards demanded above.

45. Defendant George Kazen was advised of the illegalities, dishonesty and corruption in the Brownsville Division as early as 2 October, 1997. As the Chief U.S. District Judge for the Southern District of Texas, Kazen has the power to initiate disciplinary action against

dishonest and corrupt judges, and the power to initiate the removal of dishonest and corrupt magistrate judges from their bench. Yet, he has done nothing. Again on 19 January, 1998, Kazen was advised that Vela and Garza had denied or ignored Motions for Default Judgement against those defendants whose lawyers had placed them into default for failure to respond and defend pursuant to FRCP, Rule 4[a] and the summons, it'self. Kazen intentionally and maliciously ignored the information for the purpose of protecting the Brownsville Division judiciary, allowing them to continue their dishonest and corrupt actions to deny the Plaintiff his 5th Amendment Rights to Due Process. Persistently, on 14 March, 2000, Kazen was again asked to investigate his own court and to act judicial in dealing with Defendants Ellison and Notzon, to bring this rotten mess within his jurisdiction to an honorable termination. Acting clearly outside his judicial authority, he joined in the conspiracy to deny the Plaintiff his 5th Amendment Rights to Due Process of the Laws, by joining the co-conspirators in their quest to harm this Plaintiff, who invokes Title 42, USC Section 1985: CITIZEN'S RIGHTS TO BE FREE FROM CONSPIRACY. See also *Shimman v Frank*: UNDER PROPER CIRCUMSTANCES, INACTION CAN BE THE BASIS FOR LIABILITY UNDER TITLE 42, USC, SECTION 1986. Plaintiff demands the following restitution of this defendant:
a. Injunctive relief in the form of a written request for an FBI investigation into dishonesty and corruption in the Southern District of Texas judiciary, and the U.S. Attorney. The request should be clearly executed by Judge Kazen's own name on the signature line, addressed to: Federal Bureau of Investigation, U.S. Post Office and Courthouse Bldg., 615 East Houston St.. San Antonio, Texas 78205-9998. To assure that this information will be furnished to the FBI, Plaintiff will supply a stamp-filed copy of this Civil Action to their attention, shortly. Further, Plaintiff demands the following monetary restitution from Defendant Kazen:
b. Compensatory damages of one hundred thousand dollars, and;
c. Punitive damages of one hundred fifty thousand dollars, plus;
d. Attorney's fees equal to 40% of the awards demanded above.

46. On 15 March, 2000, Plaintiff filed Civil Action L-00-30 in the Laredo Division, charging the above defendants with falsifying court documents and obstruction of justice. A pre-trial conference was scheduled for 7 June, 2000, ***by presiding judge/defendant Marcel C. Notzon,*** which is a bit strange, even for the dishonest and corrupt Southern District of Texas. Notzon further corrupted herself, the Laredo Division and the Southern District of Texas, when on 1 June, 2000, she vacated all court settings in an ORDER to recuse herself from CA L-00-30. The recusal was long overdue. However, vacating the mandated conference violates Plaintiff's 5th Amendment Rights to Due Process of the Laws. In that she was acting illegally as the presiding judge, is ample proof that Notzon acted outside her jurisdiction, but her malicious intent in vacating the 7 June, 2000, conference, clearly violates Plaintiff's 14th Amendment Rights, as well. Plaintiff demands restitution, as follows:
46[a]. For denying Plaintiff his 5th Amendment Rights to Due Process against Defendant Kathy Johnson:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.
46[b]. For denying Plaintiff his 5th Amendment Rights to Due Process against Defendant Marcel C. Notzon:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

46[c]. For denying Plaintiff his 5th Amendment Rights to Due Process against Defendant Hector Ramirez:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above

46[c]. For denying Plaintiff's 5th Amendment Rights to Due Process against Defendant Keith Ellison:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

46[d]. For denying Pllaintiff's 5th Amendment Rights to Due Process against Defendant State Bar of Texas:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40 % of the award demanded above.

46[e] For denying Plaintiff's 5th Amendment Rights to Due Process against Defendant State of Texas:

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

47. U.S. Distict Judge, Keith P. Ellison is responsible for the actions of his subordinate magistrate judge, Defendant Notzon. Ellison was acting intentionally and maliciously to harm the Plaintiff, clearly outside his jurisdiction, when Notzon was illegally assigned jurisdiction of L-00-30, in which she is a defendant. Ellison is also directly responsible that Plaintiff's 5th Amendment Rights to Due Process of the Laws have not been afforded in Civil Action L-00-30,  for which the Plaintiff demands the following damages of Defendent Keith P. Ellison:

a. Injunctive relief in the form of signed and sealed Writs of Execution for each and every defendant in default in Civil Action L-00-30, for failure to respond and defend pursuant to FRCP, Rule 4[a], and the Summons, it'self, and;

b. Compensatory damages of one hundred thousand dollars, and;

c. Punitive damages of one hundred fifty theousand dollars, plus;

d. Attorney's fees equal to 40% of the awards demanded above.

48. Defendant State Bar of Texas intentionally licensed the dishonest and corrupt defendants named above - Ellison, Notzon and Kazen - without first properly qualifying them as attorneys, then failed to scrutinize them, afterward, resulting in their malicious appointment to the federal bench by whatever depraved individual appointed them. For allowing these three individuals to practice in the State of Texas, the Bar also made it possible that they disallowed an honest and law-abiding citizen of Texas his 5th Amendment Rights to Due Process of the Laws, for which Plainiff demands the following restitution;

a. Compensatory damages of two hundred fifty thousand dollars, plus;

b. Attorney's fees equal to 40% of the award demanded above.

49. Defendants State Bar of Texas, State of Texas, and Migdalia Lopez, failed to respond within the twenty day mandated period, pursuant to FRCP, Rules 4[a], and the summons, it'self, thus placing themselves into default. Plaintiff timely filed a motion, then a second

motion, for default judgement, which was ignored by Defendants Notzon and Ellison, as well as the Clerk, whose mandated duty it is to enter default, but not deny, pursuant to FRCP, Rule 55[a][b][1], (enclosed as appendix #7). This law clearly defines its mandated Rules for the Clerk: WHO *SHALL* ENTER THE PARTY'S DEFAULT. In that the deputy clerk for the Laredo Division is under the direction of the U.S. District Judge, Laredo Division, Defendant Keith P. Ellison is guilty of maliciously conspiring with the presiding judge, Notzon, and the Deputy Clerk, Kathy Johnson, to prevent the Plaintiff from being afforded his 5th Amendment Rights to Due Process of the Laws, and 14th Amendment Rights to regain his good name, honor, integrity and impeccable reputation. In that Ellison took the oath of office to Uphold, Protect and Defend the Constitution, yet prevented his clerk from acting upon Rule 55[a][b][1], Ellison acted clearly outside his jurisdiction, and Plaintiff demands the following restitution from this inept, incompetent federal employee/Defendant;

a.  For violating Plaintiff's 5th Amendment Rights, compensatory damages of two hundred fifty thousand dollars, plus;

b.  Attorney's fees equal to 40% of the award demanded above.

c.  For violating Plaintiff's 14th Amendment Rights, compensatory damages of two hundred fifty thousand dollars, plus;

d.  Attorney's fees equal to the award demanded in sub-paragraph c.

50.  Further as to Defendant Ellison, who did intentionally, knowingly and maliciously, prevent Deputy Clerk Kathy Johnson from affixing her signature and the seal of the court to Plaintiff's Writs of Execution against defendants in default, pursuant to FRCP, Rule 69, and who, in so doing, denied Plaintiff's 5th Amendment Rights to Due Process of the Laws. And, the Federal Rules of Civil Procedure, are laws. By violating the laws, Defendant Ellison clearly acted outside his jurisdiction, for which the Plaintiff demands the following restitution:

1.  Injunctive relief in the form of signed and sealed Writs of Execution against each and every defendant who is in default in Civil Action L-00-30, for failure to respond and defend within their alloted 60 day period, and;

2.  Compensatory damages of one hundred thousand dollars, and;

b.  Punitive damages of one hundred fifty thousand dollars, plus;

3.  Attorney's fees equal to 40% of the awards demanded above.

51.  Assistant U.S. Attorney Nancy Cross Graham, acting as defense counsel for the federal defendants in L-00-0030, has never filed her Original Response to defend pursuant to FRCP, Rule 4[a] and the summons, it'self. Rather, on 12 May, 2000, 61 days after L-00-0030 was filed, Ms Graham filed a Motion for an enlargement of time beyond her sixty day period, claiming the defendants had given her nothing, and/or insufficient information,to serve a response to the Plaintiff's Petition. She petitioned the court for an additional 60 days, until 14 July, 2000, in which to respond. Plaintiff filed his Vehement Objections to an Extenion of time on 22 May, 2000, which was never answered, nor was her motion ever ruled on. Therefore, each and every defendant in Civil Action L-00-30, are in default. The reason, of course, is due to Defendant Notzon's Order of 1 June, 2000, mentioned above. No paperwork has been supplied to the Plaintiff in regard to who would replace her. However, on 5 June, 2000, Plaintiff received another such order from Defendant Ellison, who has recused himself,

as well. Not surprisingly, Plaintiff has been furnished with no paperwork that Ellison was assigned jurisdiction of L-00-30. Nonetheless, the case has been maliciously placed into a dormant state by at least three conspirators; Kazen, Notzon and Ellison. In that Defendant Ellison is the U.S. District Judge of the Laredo Division, his latest dishonest and malicious act to deny the Plaintiff his Constitutional Rights to a fair trail, or any trial at all, under the Due Process Clause, violates his oath of office and places his illegal activities outside his jurisdiction. Plaintiff demands the following restitution from Defendant Ellison:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
d. Attorney's fees equal to 40% of the award demanded above.

52. On 22 May, 2000, Plaintiff filed a Motion of objection to lawyer Nancy Graham's Motion for an extention of time, in which she perjured her document. In the objection, Plaintiff plead with the Court to deny Graham's Motion for an extention of time, and allow the pre-trial and scheduling conference to proceed, as schedlued.  The Court ignored the Motion, thus violating FRCP, Rule 1[a]; which mandates a just, speedy and inexpensive determination of _**EVERY ACTION.**_ By _**violating the Federal Rules of Civil Procedure, Defendants Kazen, Ellison and Notzon have antagonisticaally and maliciously placed themselves above the laws, clearly outside their jurisdiction.**_  For acting in a malicious manner to deny the Plaintiff his Rights to Rule 1, unconditionally, also violates his 5th and 14th Amendment Rights to Due Process of the Laws.  Plaintiff demands the following restitution from these three defendants
1. From Defendant Notzon, who illegally acted as the Presiding Judge in Civil Action L-00-30, and intentionally, illegally, maliciously and dishonestly caused delays that violate Rule 1:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to 40% of the award demanded above.
2. From Defendant Ellison, who allowed Notzon to act illegally as the Presiding Judge:
a. Compensatory damages of two hundred fifty thousand dollars, plus;
b. Attorney's fees equal to the award demanded above.
3.  From Defendant Kazen, who was aware of the illegalities performed by his subordinate
 Judges, yet did nothing to prevent it nor make voluntary restitution after the fact:
a.  Compensatory damages of two hundred fifty thousand dollars, plus;
b.  Attorney's fees equal to 40% of the award demanded above.

53. On 5 May, 2000, Plaintiff persistenty searched for an honest judge in the Southern District of Texas, and filed to appear in forma pauperus, directing Civil Action H-00-133 to the senior district judge of the Houston Division.  The defendants are: Vela, Tagle, Rainey, Notzon and Kazen. Plaintiff specified to the Court his demands for an honest hearing before an honest judge, and Prayed that if  none were available in the Houston Division, that the case should be reassigned into a venue where one would hear the case pursuant to the Federal Rules of Civil Procedure.  Rather, one Ms. Lynn N. Hughes took it upon herself  to deny the Plaintiff's 5th and 14th Amendment Rights to Due Process, by authoring an OPINION ON DISMISSAL, on 12 May, 2000. (See #9). Ms. Hughes lied through her teeth when she stated, evidently to herself: WATKINS DID NOT APPEAL THE RULINGS AGAINST HIM IN THE THREE CLOSED CASES, meaning B-95-183, V-98-0024, and V-99-14. Ms. Hughes then rants and

raves against the Plaintiff for seeking justice through the federal court system, and states, bluntly: HE MAY NOT. She then lied through her teeth again on page two of a two page document, when she states: "IN SEPTEMBER OF 1998, WHEN JUDGE TAGLE DISMISSED CIVIL ACTION B-95-183, WITH PREJUDICE , SHE THREATENED SANCTIONS IF *HE* FILED MORE SUITS ON THE TRANSACTION. The true fact is: DEFENDANT TAGLE THREATENED SANCTIONS AGAINST HOMER LAMAR WATKINS (no relation), and Defendant Hughes is a liar. Defendant Hughes then sent her perjured document to herself on the same day, 12 May, 2000, to justify her ORDER TO DISMISS WITH PREJUDICE.(See #10) She also denied the petition to proceed as a pauper. Plaintiff filed a Motion to Remand her falsified order on an unknown date, due to no return from the clerk, (See # 11) but received confirmation that it was indeed filed, when Ms. Hughes again acted outside her jurisdiction by admitting that she falsified her document of 12 May, 2000, when on 1 June, 2000, she issued another order that reads; THE PLAINTIFF'S MOTION TO REMAND FALSIFIED ORDER IS DENIED, AND HIS THIRD MOTION TO APPEAR AS A PAUPER IS DENIED (See # 12). It was her third denial of the motion to appear in forma pauperus, albeit that 5th Circuit granted him to so appear, as had the Supreme Court of the United States.

Pursuant to the RULES OF DISCIPLINE FOR UNITED STATES DISTRICT JUDGES, the following pertains to each and every dishonest and corrupt U.S. judge named in this petition: In Canon 2: A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES. A JUDGE SHOULD RESPECT AND COMPLY WITH THE LAW AND SHOULD ACT AT ALL TIMES IN A MANNER THAT PROMOTES PUBLIC CONFIDENCE IN THE INTEGRITY AND IMPARTIALITY OF THE JUDICIARY. A JUDGE SHOULD NOT LEND THE PRESTIGE OF JUDICIAL OFFICE TO ADVANCE THE PRIVATE INTERESTS OF OTHERS, such as lying like a stray dog to protect another crooked brother/sister judge. Plaintiff demands the following restitution from Defendant Lynn N. Hughes:

1. For acting maliciously toward this defendant to deny his 5th Amendment Rights to Due Process, by lying to justify her actions, thus placing herself clearly outside her jurisdiction:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.
2. For malicioulsy dismissing H-00-133 in violation of FRCP, Rule 12, without prior notice:
a. Compensatory damages of one hundred thousand dollars, and;
b. Punitive damages of one hundred fifty thousand dollars, plus;
c. Attorney's fees equal to 40% of the awards demanded above.
3. For perjuring her court document in regards to Defendants Tagle's threats of sanctions against "he" for filing another complaint:
a. Compensatory damages of two hundred fifty thousand dollars, plu;
b. Attorney's fees equal to 40% of the award demanded above.'

In closing, Your Honor, Plaintiff asks nothing more nor less of this Honorable Texas District Court, than is mandated in the Constitution, its Amendments, the Federal Rules of Civil Procedure, plus any and all Rules of Texas Law as pertains to the infractions named herein by the depraved and degenerate and unscrupulous defendants who have acted as

individuals, and/or in concert in a conspiracy to maliciously deny the Plaintiff's Constitutional Rights to Due Process of the laws. This Court has a monumental opportunity to divest and dismantle a vast chain of judicial corruption and organized judicial crime of discrimination against a minority race in the Southern District Of Texas. To shirk those duties would place the District Court of Texas in the same mold of discrimination against another minority race in the United States - a race of people in which Plaintiff has been enjoined by marriage, and enjoys the love, affection, loyalty and devotion to the sanctity of the institution of fatherhood and the advantages of love and devotion from deserving grand children, who've been raised to respect God and His son Jesus, and are thus far unaware of race barriers due to their rearing. However, as residents of the Rio Grande Valley, and specifically, in San Benito, these children and grand children deserve and are entitled to, equal protection of the United States Constitution and the laws of the state of Texas, starting now - in this Honorable Court - with this Honorable Judge. To have their grandfather, known as Papa-John, denied justice in the Consitutional matters being placed before this Court, also denies their chances of living in a safe society where the Constitution has been trampled into the mud by dishonest and corrupt individuals who can and will continue to do so as they grow into adulthood. The time and opportunity to halt this scurge upon society in the area, rests with this Texas Court. Plaintiff Prays that God and your conscience, Your Honor, will act as both co-pilot and navigator, while the administrative, managerial and supervisory aspects of the laws involved in this Civil Action are being upheld honorably during the proceedings leading to, and during, the trail.

Further, Plaintiff Prays that this Honorable Court will take into consideration the fact that Plaintiff is a seventy five year old disabled veteran who has been forced to live in poverty for a period of ten years, due to the dishonorable acts of the dishonorable defendants named in this Civil Action. Plaintiff has been on the operating room table with Cardiologist Charles Mild, of Harlingen, on five or six occasions since 1997, owns eight (8) Purple Hearts for wounds received in aerial combat, and time is of the essence in obtaining an honorable termination of ten years of dishonor, disgust for the penal system, the legal profession, and the inherrently dishonest Rio Grande Valley Federal Judicial system. To that end, this Plaintiff and the records of events named in this Civil Action are available to this Court twenty four hours a day, seven days a week. It is imperative that this matter is brought to an honorable termination in this lifetime.

Most respectfully presented by;

*H.L. WATKINS, JR.*
Plaintiff, pro se.
El Camino Real - Box #59
San Benito, Tx. 78586
Tel/fax (956) 399-2312

Enclosures attached.

34

## ARTICLE 59.03 STATEMENT ON SEIZED PROPERTY

FILED 11 TF 90=040CK
AURORA DE LA GARZA DIST. CLERK
JUN 2 3 2000
DISTRICT COURT OF CAMERON COUNTY, TEXAS

THE STATE OF TEXAS        §

COUNTY OF CAMERON         §

BEFORE ME, the undersigned, on this day personally appeared _____

Sgt Crispin C. Trevino , known to me to be the person whose name is

subscribed below, who after being duly sworn, deposes and says:

"My name is Crispin C. Trevino , I am a peace officer

employed with the Harlingen Police Department assigned to . I hereby acknowledge

Cameron County Drug Enforcement Task Force

that I have seized the property described in the schedule below and I am in

custody of said property. This property was seized by my department on

June 4,1990 .

### SEIZED PROPERTY SUBJECT TO FORFEITURE

PROPERTY/ITEM                          IDENTIFICATION #

American Currency in the amount of $25,600.00  (Twenty-five thousand and Six
                                                hundred dollars)

The property described above was seized because (describe why property was
seized): When Horace Lamar WatkinsA/M 65 years old and  Whitfield M. Palmer III
were arrested in possession of a quantity of marihuana in Harlingen, Texas
They had negotiated with others to purchase as much as 200 lbs of marihuana
The money was found in their vehicle.   $2,200 were found in a pouch in the
vehicle. $1000.00 were found on the person of Whitfield Palmer and the
rest of the money $22,400 were found as they attempted to pay with it to
another individual.   Approximately 55 pounds of marihuana were seized.

Sgt Crispin C. Trevino
AFFIANT

SUBSCRIBED AND SWORN TO BEFORE ME by the said  Sgt. Crispin Trevino
_____, on this  4th  day of  June , 1990, to
certify which witness my hand and seal of office.

Notary Public in and for State of Texas
Printed Name:  Robert W. Repp
My Commission Expires:  09/10/93

# #2

**STATE OF KANSAS**
Division of Vital Statistics

**CERTIFICATE OF DEATH**

H 014908

OCT 6 1964

**1. PLACE OF DEATH**

a. County: **Kingman** — c482

b. City, Town, or Location: **Kingman**

c. Length of Stay in 1b: **13 days**

d. Name of Hospital or Institution: **Donley Hosp & Clinic** 2

e. Is Place of Death Inside City Limits? Yes ☒ No ☐

**2. Usual Residence (Where deceased lived. If institution, residence before admission)**

a. State: **New Mexico**   Count: **Lea**

b. City, Town, or Location: **Lovington**   9329

c. Street Address:

f. Is Residence Inside City Limits? Yes ☒ No ☐

g. Is Residence on a Farm? Yes ☐ No ☒

**3. NAME OF DECEASED** (Type or Print): **HORACE LAMAR WATKINS**

**4. DATE OF DEATH**: **Sept 20, 1964**

**5. SEX**: **male**

**6. Color or Race**: **white**

**7. Married ☒ Never Married ☐ Widowed ☐ Divorced ☐**

**8. Date of Birth**: **19 Mar 1890**

**9. Age (in years last birthday)**: **74**

**10. Usual Occupation**: **Minister**   Kind of Business or Industry: **Clergy**

**11. Birthplace**: **Sanangelo, Tex.**

**12. Citizen of What Country**: **USA**

**13. Father's Name**: **Wm. David Watkins**

**14. Mother's Maiden Name**: **Jane Brown**

**15. Was Deceased Ever in U.S. Armed Forces?** **no**

**16. Social Security No.**: **52-28-2787**

**17. Informant**: **Alvin Watkins   Murdock, Kansas**

**18. CAUSE OF DEATH**

Part I. Death was caused by:

(a) **Medullary paralysis**

Due to (b) **Metastatic Carcinoma**

Due to (c) **Prostatic Carcinoma**

Part II. Other significant conditions: **177 X**

Was Autopsy Performed?

**23a. I hereby certify** ... 9-7-64 ... 9-20-64 ...

Burial **9/1/64**   St. Louis Cemetery   Waterloo, Kansas

10-6-1964   Lovington   Kingman, Kansas



STATE OF NEW MEXICO, BUREAU OF PUBLIC HEALTH

**CERTIFICATE OF BIRTH**

#3

Registered No. 22

FULL NAME OF CHILD: H L Watkins Jr

FATHER: Hodge L Watkins
MOTHER: Mabel Moore

State of New Mexico ) ss
County of Santa Fe )

I hereby certify the within and foregoing to be a true and correct copy of an original certificate filed with the State Department of Public Health of the State of New Mexico. Witness my hand and the seal of said Department this 5th day of November, 1948.

By: _____
Asst. State Registrar & Statistician

_____
State Registrar, Santa Fe, New Mexico







**TEXAS**
DEPARTMENT OF PUBLIC SAFETY
DRIVER LICENSE

CLASS:C        DL: 12939456
DOB: 05-21-25    HT: 5-09
EXPIRES: 05-21-01  EYES: HZL
DONOR: NO      SEX: M
REST: A        END:

WATKINS,H L JR
EL CAMINO REAL BOX 59
SAN BENITO TX 78586

SOCIAL SECURITY

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
THIS NUMBER HAS BEEN ESTABLISHED FOR
H L WATKINS JR

SIGNATURE

suffered to due the required or an in has because was so widely ac
cepted only recently has the Court had the opportunity to pro
nounce it guaranteed by due process.[25] The presumption of inno
cence is valuable in assuring defendants a fair trial,[1] and it oper
ates to ensure that the jury considers the case solely on the evi
dence.[2]

The Court has long held it would set aside under the due proc
ess clause convictions that are supported by no evidence at all,[3] bu
*Winship* necessitated a reconsideration whether it should in re
viewing state cases weigh the sufficiency of the evidence. Thus, i
*Jackson* v. *Virginia*,[4] it held that federal courts, on direct appeal
federal convictions or collateral review of state convictions, mu
satisfy themselves whether the record evidence could reasonab
support a finding of guilt beyond a reasonable doubt. The questic
the reviewing court is to ask itself is not whether *it* believes th
evidence at the trial established guilt beyond a reasonable doub
but whether, after viewing the evidence in the light most favorab
to the prosecution, *any* rational trier of fact could have found th
essential elements of the crime beyond a reasonable doubt.[5]

---

[23] Id., 363 (quoting *Coffin* v. *United States*, 156 U.S. 432, 453 (1895)). Just
Harlan's *Winship* concurrence, id., 368, proceeded on the basis that inasmuch
there is likelihood of error in any system of reconstructing past events, the error
convicting the innocent should be reduced to the greatest extent possible throu
the use of the reasonable doubt standard.

[24] *Miles* v. *United States*, 103 U.S. 304, 312 (1881); *Davis* v. *United States*.
U.S. 469, 488 (1895); *Holt* v. *United States*, 218 U.S. 245, 253 (1910); *Speiser* v. *R
dall*, 357 U.S. 513, 525-526 (1958)

[25] *In re Winship*, 397 U.S. 358 (1970), arose in the context of a juvenile de
quency adjudication. Justice Black dissented, doubting that the Constitution
posed any standard of proof. Id., 377. *Accord: Estelle* v. *Williams*, 425 U.S. 501 (19
*Henderson* v. *Kibbe*, 431 U.S. 145, 153 (1977); *Ulster County Court* v. *Allen*, 442 U
140, 156 (1979); *Sandstrom* v. *Montana*, 442 U.S. 510, 520-524 (1979). On the inte
lated concepts of the burden of the prosecution to prove guilt beyond a reason
doubt and defendant's entitlement to a presumption of innocence, *see Taylor* v. *K
tucky*, 436 U.S. 478, 483-486 (1978), *and compare Kentucky* v. *Whorton*, 441 U.S.
(1979).

[1] E.g., *Deutch* v. *United States*, 367 U.S. 456, 471 (1961).

[2] *Holt* v. *United States*, 218 U.S. 245 (1910); *Agnew* v. *United States*, 165 U.S
(1897). These cases overturned *Coffin* v. *United States*, 156 U.S. 432, 460 (1895
which the Court held that the presumption of innocence was evidence from w

UNITED STATES DISTRICT COURT   SOUTHERN DISTRICT OF TEXAS

### Notice of the Right to Try
### a Civil Case before a Magistrate Judge

With the consent of all the parties, a United States Magistrate Judge may preside in a civil case, including jury trial and final judgment.

The choice of trial before a magistrate judge is entirely yours. Tell only the clerk. Neither the judge or magistrate judge will be told until all the parties agree.

The district judge to whom your case is assigned must approve the referral to a magistrate judge.

You may get consent forms from the clerk.

Michael N. Milby, *Clerk*

AFFIDAVIT OF ALFREDO PADILLA

THE STATE OF TEXAS:

COUNTY  OF CAMERON:

BEFORE ME THE UNDERSIGNED AUTHORITY on this day personally appeared ALFREDO PADILLA, who upon his oath stated as follows:

"My name is Alfredo Padilla.  I am an attorney licensed by the State of Texas to practice law and have assigned to me Texas State Bar Card number 15404600.  I have been licensed to practice law by the Texas Supreme Court since November, 1978, with authority to practice before all courts of the State of Texas.

I am the attorney named as Defendant in Cause Number B-00-112.  I was appointed by the Honorable Judge Darrell Hester to represent the Defendant in Cause Number 90-CR-814-C.  The Defendant was sentenced on December 3, 1990.

Plaintiff H.L. Watkins, Jr. had no contact with me in person or writing until I received his citation in Cause Number B-95-183. The Plaintiff made no demand against me from 1990 until 1995 and his case should be dismissed on limitation.  Furthermore Plaintiff did not file any cause of action to said aside his conviction until after 1995.  To my knowledge Mr. H.L. Watkins, Jr.'s conviction has never been set aside.

                                        _____
                                        ALFREDO PADILLA

**AFFIDAVIT OF ALFREDO PADILLA**                                              1

EXHIBIT "5"

SUBSCRIBED AND SWORN TO BEFORE ME by the said ALFREDO PADILLA, on this the 11th day of July, 2002.



Notary Public, State of Texas

ANITA S PADILLA
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-16-2005

**AFFIDAVIT OF ALFREDO PADILLA**                                    2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


H.L. WATKINS, JR.                        *
    Plaintiff, Pro Se

v.

JAMES Y. SITGREAVES,
JOHN CARRINGTON,
ALFREDO PADILLA,
LUIS V. SAENZ,
ELOY CANO,
FERNANDO MANCIAS,
HIDALGO COUNTY,                         *   CIVIL ACTION NO. B-00-112
MIGDALIA LOPEZ,
FILEMON V. VELA,
FIDENCIO GARZA, JR.,
HILDA G. TAGLE,
JOHN W. BLACK,
JOHN D. RAINEY,
W. EUGENE DAVIS,
HAROLD DeMOSS, JR.,
JAMES L. DENNIS,
MARCEL C. KNOTZON,
KEITH B. ELLISON,
GEORGE P. KAZEN,
LYNN H. HUGHES,
STATE BAR OF TEXAS,
MERVYN M. MOSSBACKER, U.S.
ATTORNEY and U.S. ATTORNEY
GENERAL JANET RENO,
    Defendants                           *


## O R D E R

Defendant Alfredo Padilla's Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure and Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure having been presented and reviewed by the Court the

**ORDER**                                                           1

Court hereby orders as follows:

    _____ GRANTS Defendant Alfredo Padilla's Motion to Dismiss Pursuant Rule 12(b) and (6) and Orders the case dismissed as against Defendant Alfredo Padilla;

    _____ GRANTS Defendant Alfredo Padilla's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Orders the case dismissed as against Defendant Alfredo Padilla;

    _____ Denies Defendant Alfredo Padilla's Motion to Dismiss and Motion for Summary Judgment

    _____ Sets Defendant Alfredo Padilla's Motion to Dismiss and Motion for Summary Judgment for hearing on the _____ day of _____, 2002, at _____ o'clock \_\_\_\_m. in Brownsville, Texas.

Signed for entry on this the _____ day of _____, 2002.

                        _____
                        JUDGE PRESIDING

**ORDER**                                                          2

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of July, 2002, a true and correct copy of the foregoing Defendant Alfredo Padilla's Motion to Dismiss Pursuant to Rule 12(b)(1) and (6) of the Federal rules of Civil Procedure and Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure was forwarded by United States mail, postage pre-paid, certified mail, return receipt requested 7001 0001 4522 4365 and by regular mail to:

Mr. H. L. Watkins
El Camino Real Box 59
San Benito, Texas 78586


ALFREDO PADILLA